109 T.C. No. 5


UNITED STATES TAX COURT


CONNECTICUT GENERAL LIFE INSURANCE COMPANY, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

CIGNA CORPORATION AND CONSOLIDATED SUBSIDIARIES, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket Nos. 21212-92, 21213-92.      Filed August 12, 1997.


     <u>Held</u>:  In consolidating nonlife insurance
companies with life insurance companies and for
purposes of calculating the amount of net operating
losses of nonlife insurance companies that, under sec.
1503(c)(1) and (2), I.R.C., may reduce income of the
life insurance companies, companies that constituted
members of a "recently acquired" affiliated group of
nonlife insurance companies that previously filed
consolidated Federal income tax returns are to be
treated as separate entities.

A. Duane Webber, Leonard B. Terr, C. David Swenson, and Christopher R. Loomis, for petitioners.

John A. Guarnieri, Richard H. Gannon, and Richard L. Osborne, for respondent.

OPINION

SWIFT, Judge: These consolidated cases are before the Court under Rule 121 on the parties' cross-motions for summary judgment. Petitioners contend that if their motion for summary judgment is not granted, a certain factual matter remains in dispute that precludes summary judgment in favor of respondent.

The issue for decision is whether, in consolidating nonlife insurance companies (sometimes referred to as nonlife companies) with life insurance companies (sometimes referred to as life companies) and for purposes of calculating, under section 1503(c)(1) and (2), the amount of net operating losses of nonlife companies that may reduce income of life companies, companies that constituted members of a "recently acquired" affiliated group of nonlife companies that previously filed consolidated Federal income tax returns are to be treated as a single aggregate entity, as petitioners contend, or as separate entities, as respondent contends.

The issue presented in these cross-motions for summary judgment involves deficiencies determined by respondent in the Federal income taxes of petitioners Connecticut General Life

Insurance Co. (ConnLife) and CIGNA Corp. and their consolidated subsidiaries (CIGNA) as follows:

| Petitioner | Year | Deficiency |
|---|---|---|
| ConnLife | 1980 | $ 3,360,873 |
| CIGNA | 1982 | 15,080,878 |
| CIGNA | 1983 | 1,916,121 |
| CIGNA | 1984 | 41,066,157 |
| CIGNA | 1985 | 752,636 |
| Total | | $62,176,665 |

Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

For 1981 and through March 31, 1982, Connecticut General Corp. (CG), ConnLife, and CG's over 40 affiliates (the CG Group) joined in filing consolidated Federal income tax returns, with CG as the common parent of the affiliated group. ConnLife constituted the sole life insurance company in the CG Group.

Members of the CG Group were engaged primarily in selling, underwriting, and servicing various types of insurance (namely, individual and group life, health and annuity insurance, and personal and commercial property and casualty (P&C) insurance).

Acquisition of INA

On March 31, 1982, the CG Group and INA Corp. (INA) and its over 160 affiliated companies (the INA Group) combined for

substantial business reasons by way of a tax-free reorganization under section 368. As the culmination of the reorganization, CIGNA was incorporated on March 31, 1982, as the holding company for the surviving affiliated business entities.

In years prior to the combination of the CG and the INA Groups, INA and its affiliates had filed consolidated Federal income tax returns, with INA as the common parent corporation of the affiliated INA Group. Members of the INA Group were engaged primarily in selling, underwriting, and servicing P&C insurance.

The reorganization involving the CG and the INA Groups was treated as a reverse acquisition under section 1.1502-75(d)(3), Income Tax Regs. After the reorganization and for Federal income tax purposes, the CG Group was treated as continuing in existence and the INA Group was treated as ceasing to exist. CIGNA was treated as the common parent corporation of the continuing CG Group (the CIGNA Group), and companies that constituted members of the former INA Group became members of the CIGNA Group.

Acquisition of PHC

On November 20, 1984, an affiliate of CIGNA acquired 89.9 percent of the stock of Preferred Health Care, Inc. (PHC), in a taxable transaction. As a result of this transaction, PHC and its subsidiary companies (the PHC Group) terminated, and companies that constituted members of the former PHC Group became members of the CIGNA Group.

In years prior to the acquisition by CIGNA of PHC and its subsidiary companies, PHC and its subsidiaries had filed consolidated Federal income tax returns, with PHC as the common parent corporation of the affiliated PHC Group. The PHC Group operated prepaid dental programs in Florida, New Jersey, and eastern Pennsylvania.

Consolidated Federal Income Tax Returns of the CIGNA Group

For 1982 through 1985, the consolidated Federal income tax returns that were filed on behalf of the CIGNA Group included the companies that constituted members of the former INA Group.

For 1984 and 1985, the consolidated Federal income tax returns that were filed on behalf of the CIGNA Group also included the companies that constituted members of the former PHC Group.

For 1982 through 1985, under a special rule set forth in section 1504(c) allowing life insurance companies to file consolidated Federal income tax returns with nonlife affiliated companies, ConnLife was included as the sole life insurance company in the above consolidated Federal income tax returns of the CIGNA Group.

For 1982 through 1985, all of the nonlife companies that constituted members of the CIGNA Group incurred the following consolidated net operating losses (CNOL's), and ConnLife, the

only life insurance company in the CIGNA Group, earned the
following income:

| Year | CNOL's of Nonlife Companies | Income of ConnLife |
|------|------------------------------|--------------------|
| 1982 | ($ 197,385,675) | $116,294,363 |
| 1983 | ( 244,963,449) | 82,316,221 |
| 1984 | ( 553,077,555) | 331,452,903 |
| 1985 | ( 1,229,220,860) | 274,458,803 |

The above CNOL's of the nonlife companies consisted of
CNOL's of both eligible companies under section 1503(c)(2)
(namely, nonlife companies that had been members of the prior CG
Group and the CIGNA Group for at least 5 years) and ineligible
companies under section 1503(c)(2) (namely, nonlife companies
that had not been members of the prior CG Group and the CIGNA
Group for at least 5 years).  Because they had not been members
of the prior CG Group and the CIGNA Group for at least 5 years,
all of the companies that constituted members of the former INA
and PHC Groups constituted ineligible nonlife companies.

On the consolidated Federal income tax returns for 1982
through 1985 -- in order to calculate the amount of net operating
losses (NOL's) attributable to the nonlife companies that had
previously constituted members of the former INA and PHC Groups
and that therefore constituted losses of ineligible companies
that could not be used to reduce income of ConnLife (the sole
life company in the consolidated CIGNA Group) -- the CIGNA Group
treated all of the companies that constituted members of the

former INA and PHC Groups as two single, aggregate, respective entities, and the net aggregate respective losses of the companies that constituted members of the former INA Group and the former PHC Group were netted against the respective taxable income of the other companies that constituted members of the former INA Group and the former PHC Group (single entity method).

In other words, for purposes of calculating the portion of the net operating losses of the nonlife companies that constituted members of the former INA Group that, on the CIGNA Group's consolidated Federal income tax returns for 1982 through 1985, were not allowed to reduce income of ConnLife, all companies that constituted members of the former INA Group were treated as a single aggregate entity, and losses of the ineligible companies that constituted members of the former INA Group were reduced by income earned by other companies that constituted members of the former INA Group.

Further, for purposes of calculating the portion of the net operating losses of the nonlife companies that constituted members of the former PHC Group that, on the CIGNA Group's consolidated Federal income tax returns for 1984 and 1985, were not allowed to reduce the income of ConnLife, all of the companies that constituted members of the former PHC Group were treated as a single aggregate entity, and losses of the companies that constituted members of the former PHC Group were reduced by

income earned by other companies that constituted members of the former PHC Group.

On audit, for 1982 through 1985, in order to calculate the amount of net operating losses attributable to the nonlife companies that had previously constituted members of the former INA and PHC Groups and that therefore constituted losses of "ineligible" companies that could not be used to reduce income of ConnLife, respondent determined that each of the companies that constituted members of the former INA and PHC Groups should be treated as a separate entity (separate entity method), rather than merely as a part of the respective former INA and PHC Groups.

The difference between petitioners' single entity method and respondent's separate entity method is that under petitioners' single entity method losses of the ineligible nonlife companies of the former INA and PHC Groups were, in effect, indirectly made available to reduce income of ConnLife, the life company. Under respondent's separate entity method losses of ineligible nonlife companies of the former INA and PHC Groups are not, to any extent, made available to reduce income of ConnLife.

The following schedule reflects for each of the years 1982 through 1985 petitioners' and respondent's respective calculations of the amount of nonlife CNOL's that they claim should be available under section 1503(c)(1) and (2) and the regulations thereunder to reduce ConnLife's income:

Nonlife CNOL's Eligible To Reduce Income Of ConnLife*

| Year | Petitioners' Single Entity Method | Respondent's Separate Entity Method |
|------|-----------------------------------|-------------------------------------|
| 1982 | ($ 34,888,309) | ($10,225,979) |
| 1983 | ( 28,810,677) | ( 8,351,216) |
| 1984 | ( 116,008,516) | ( 26,734,260) |
| 1985 | ( 96,060,581) | ( 94,424,416) |

* These figures reflect CNOL's after application of certain percentage limitations contained in sec. 1503.

Discussion

Summary judgment may be granted if the pleadings and other materials demonstrate that no genuine issue exists as to any of the material facts and that a decision may be rendered as a matter of law. Rule 121(b); Colestock v. Commissioner, 102 T.C. 380, 381 (1994); Sundstrand Corp. v. Commissioner, 98 T.C. 518, 520 (1992), affd. 17 F.3d 965 (7th Cir. 1994).

Under section 1504(c)(2) and subject to certain limitations not here relevant, an affiliated group of companies that includes nonlife and life companies may elect to file consolidated Federal income tax returns and to include the life companies in the consolidated income tax returns. Sec. 1504(c)(2).

The above election to consolidate on a limited basis nonlife and life companies was added to the Code as part of the Tax Reform Act of 1976, Pub. L. 94-455, sec. 1507(a), 90 Stat. 1739, in order that nonlife companies (such as P&C insurance companies, which P&C industry had been experiencing losses and a diminished

capacity to write insurance) could use nonlife losses to reduce income of affiliated life companies. Congress anticipated that the option to consolidate nonlife and life companies would, in particular, improve the financial condition of P&C insurance companies. See S. Rept. 94-938, at 454-455 (1976), 1976-3 C.B. (Vol. 3) 49, 492-493.

Congress, however, in order to minimize trafficking by profitable life insurance companies in unprofitable P&C insurance companies, provided certain rules and limitations on the use in consolidated Federal income tax returns of nonlife losses to reduce life income. See S. Rept. 94-938, supra at 454-455, 1976-3 C.B. (Vol. 3) at 492-493; 122 Cong. Rec. 24680-24685 (1976).

Section 1503(c)(1) provides generally that where an election is made under section 1504(c)(2) to include both nonlife and life companies in a consolidated Federal income tax return, certain losses of nonlife companies may be taken into account and may reduce income of the life companies included in the return but only pursuant to regulations prescribed by the Secretary. Sec. 1503(c)(1).

Section 1503(c)(1) also provides that nonlife losses must first be carried back against prior year income of the particular nonlife companies that incurred the losses, and nonlife losses that are not absorbed as carrybacks against prior year income of the nonlife companies may be applied against income of the life companies to the extent of only 35 percent of the nonlife CNOL or

35 percent of the income of the life companies, whichever is less.[1]  Section 1503(c)(1) provides in part as follows:

> (1) In general--If an election under section 1504(c)(2) is in effect for the taxable year and the consolidated taxable income of the * * * [nonlife members of the group] results in a consolidated net operating loss for such taxable year, then under regulations prescribed by the Secretary, the amount of such loss which cannot be absorbed in the applicable carryback periods against the taxable income of such * * * [nonlife members of the group] shall be taken into account in determining the consolidated taxable income of the affiliated group for such taxable year to the extent of 35 percent of such loss or 35 percent of the taxable income of the * * * [life members of the group], whichever is less. * * *

Section 1503(c)(2) provides a further specific limitation on the use of nonlife losses to reduce life income where the particular nonlife losses that are involved are realized by companies that were not, for the immediately preceding 5 years, part of the same affiliated group that is now filing a consolidated Federal income tax return.  Section 1503(c)(2) provides in pertinent part as follows:

> a net operating loss for a taxable year of a * * * [nonlife member of the group] shall not be taken into account in determining the taxable income of a * * * [life member of the group] if such taxable year precedes the sixth taxable year such members have been members of the same affiliated group * * *.

---

[1]    For 1982, sec. 1503(c)(1) limits the losses that are allowed to reduce life income to 30 percent of the income of the life companies or 30 percent of the nonlife CNOL, whichever is less.

Under legislative regulations promulgated under sections 1502 and 1503, for purposes of calculating the amount of nonlife losses that are allowed to reduce life income pursuant to section 1503(c)(2), each nonlife company that constitutes a member of the consolidated group is treated as a separate entity, and the CNOL of all of the nonlife companies included in the consolidated Federal income tax return (after allowable carrybacks) is reduced by the separate "ineligible NOL" of each ineligible nonlife company that constitutes a member of the consolidated group. Sec. 1.1502-47(m)(3)(vi), Income Tax Regs. Section 1.1502-47(m)(3)(vi)(A), Income Tax Regs., provides, in pertinent part, as follows:

> the "ineligible NOL" is in the year the loss arose the amount of the separate net operating loss * * * of any nonlife member that is ineligible in that year * * *.

No provision is made in the above legislative regulations to treat a company that prior to acquisition had been a member of a group that had filed a consolidated income tax return as part of a single, aggregate group of companies and to net within that group losses of ineligible nonlife companies against income of other nonlife companies of the same acquired group.

Petitioners note, however, that the legislative regulations under sections 1502 and 1503 provide a "reserved" subparagraph for "acquired groups". Sec. 1.1502-47(m)(4), Income Tax Regs.

That reserved subparagraph states merely as follows: "Acquired Groups. [Reserved.]".

Petitioners note further that in the preamble accompanying section 1.1502-47, Income Tax Regs., a comment is made to the effect that applying petitioners' single entity method to ineligible nonlife companies that in prior years constituted members of a consolidated group may be appropriate in certain situations.

The preamble states in relevant part:

> Finally, the Treasury Department will study further whether it is appropriate to aggregate the income and losses of ineligible members in certain cases. For instance, notwithstanding the ordinary reading of section 1503(c)(2), it may be consistent with the intent of section 1503(c)(2), or correct as a matter of policy, to aggregate the income and losses of ineligible members that filed a consolidated return prior to their acquisition by * * * another group that files a consolidated return. [T.D. 7877, 1983-1 C.B. 207, 212.]

Due primarily to the presence of the above reserved subparagraph for acquired consolidated groups and due to the above language from the preamble to the regulations, petitioners argue that the separate entity treatment for ineligible nonlife companies that is provided in section 1503(c)(2) and section 1.1502-47(m)(3)(vi), Income Tax Regs., should itself be limited and should not apply to ineligible nonlife companies that previously constituted an affiliated group and that filed

consolidated Federal income tax returns (e.g., the companies that constituted members of the former INA and PHC Groups).

Petitioners cite portions of the Department of the Treasury (Treasury) administrative files under section 1.1502-47(m)(3) and (4), Income Tax Regs., that suggest that the insurance industry in general and petitioners in particular were engaged with respondent and the Treasury over a period of years in extensive discussions regarding whether a separate or a single entity method should be adopted and reflected in the regulations with regard to the treatment of losses of ineligible nonlife companies that constituted part of a previously affiliated and consolidated group. Portions of the referenced administrative files also reflect positions or recommendations of various Government officials about the separate or single entity method and indicate that some Government officials at one time or another favored a single entity method.

Petitioners argue that the administrative files establish that, in the regulations, the Treasury and respondent never adopted a final decision as to how to treat losses of ineligible nonlife companies that constituted part of a previously affiliated and consolidated group and that the "reserved" subparagraph (4) under section 1.1502-47(m), Income Tax Regs., was intended to preserve this issue until that subparagraph was promulgated.

Petitioners further argue that in the absence of a rule under the regulations as to how to treat losses of ineligible nonlife companies that constituted part of a previously affiliated and consolidated group, the statutory and regulatory provisions are unclear and ambiguous, and petitioners should be entitled to treat losses of the respective ineligible nonlife companies that constituted members of the former INA and PHC Groups under any reasonable interpretation of the statute. Petitioners then argue that treating members of the former INA Group and members of the former PHC Group as two single nonlife entities constitutes a reasonable approach.

Additionally, if we agree with respondent's interpretation of section 1.1502-47(m)(3)(vi), Income Tax Regs., with regard to the companies that constituted members of the former INA and PHC Groups, petitioners argue that the regulation should be invalidated.

Petitioners also argue that a calculation of the ineligible CNOL's using respondent's separate entity method would cause an increased overall tax liability for the CIGNA Group, as compared to the collective tax liabilities of the CIGNA Group and the former INA and PHC Groups, assuming the former INA and the PHC Groups had never been acquired. Petitioners thus conclude that any such calculation would constitute an improper, punitive calculation.

We disagree with each of petitioners' arguments.

We agree with respondent's interpretation of the statutory and regulatory provisions involved in these cases.  As indicated, section 1503(c)(1) provides generally that losses of ineligible nonlife companies may be used to reduce income of life companies but only pursuant to regulations promulgated by the Treasury and subject to the limitations contained in section 1503(c)(1) and (2).  Also as indicated, the legislative regulations that were promulgated by the Treasury generally reflect a separate entity method when calculating, under section 1503(c)(2), the amount of nonlife losses that are to be attributed to ineligible nonlife companies and therefore that may not be used to reduce income of life companies.  The statute and the regulations do not reflect any special treatment for losses of ineligible nonlife companies that previously constituted an affiliated and consolidated group.

We regard the "reserved" subparagraph (4) under section 1.1502-47(m), Income Tax Regs., as a neutral factor.  That provision simply reserves a space for regulations that may be promulgated at a later date and that may provide a special rule with regard to losses of ineligible nonlife companies that previously constituted an affiliated and consolidated group.

We regard the preamble language to the regulations as merely reflecting the Treasury's willingness to study whether a special rule should be promulgated for acquired previously affiliated and consolidated groups.  That language is not to be construed as indicating that section 1.1502-47(m)(3)(vi), Income Tax Regs.,

and the separate entity method reflected therein do not apply to ineligible nonlife companies that previously constituted an affiliated and consolidated group.

Petitioners' arguments that are based on certain material in the Treasury's administrative files under section 1.1502-47(m)(3) and (4), Income Tax Regs., are not persuasive. The documents from the administrative files are not compelling, consistent, or clear as to the intended treatment of losses of ineligible nonlife companies that constituted part of a previously affiliated and consolidated group. Also, the relied-upon material from the administrative files reflects generally only personal views of various government representatives, not official statements of respondent or of the Treasury. See Armco, Inc. v. Commissioner, 87 T.C. 865, 867-868 (1986).

In any event, personal views of such government representatives would not be able to overcome the particular statutory and regulatory scheme before us in these cases. In light of this statutory and regulatory scheme, petitioners' alleged factual matter in dispute (namely, the intent of such government representatives) is simply not sufficiently relevant to the resolution of the issue to give rise to a genuine issue of material fact. Rule 121(b).

We emphasize that section 1503(c)(1) provides that nonlife losses may be taken into account only "under regulations prescribed by the Secretary". Assuming arguendo that the above

reserved subparagraph (4) of section 1.1502-47(m), Income Tax Regs., was intended and should be construed as petitioners would have us construe it (namely, as exempting from the general separate entity method of the regulations ineligible nonlife companies that previously had been members of an affiliated and consolidated group), petitioners arguably would be left without any specific regulatory provision that would support their single entity method for such nonlife companies. Because section 1503(c)(1) provides that nonlife losses may be taken into account only as provided in regulations, the absence of any such regulation might preclude petitioners from taking into account any of the losses of the ineligible nonlife companies that previously constituted members of the former INA and PHC Groups. See Estate of Neumann v. Commissioner, 106 T.C. 216, 219-221 (1996); H Enters. Intl., Inc. v. Commissioner, 105 T.C. 71, 81-83 (1995); Alexander v. Commissioner, 95 T.C. 467, 473 (1990), affd. without published opinion sub nom. Stell v. Commissioner, 999 F.2d 544 (9th Cir. 1993).

We simply are not persuaded by petitioners' arguments. As indicated, the regulations in question are legislative in nature. Pursuant to sections 1502 and 1503(c)(1), the Treasury was given an express delegation of regulatory authority. Respondent's interpretation of the legislative regulations in these cases is sufficiently consistent with section 1503(c)(2) and its legislative purpose to restrict the use of ineligible nonlife

losses against life income. Also, respondent's interpretation is not so clearly inconsistent with the statute or its purpose as to be arbitrary and capricious and invalid. See Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 844 (1984).

Finally, petitioners' argument as to the punitive effect of the separate entity method does not justify a different result. Under the separate entity method, the CIGNA Group still obtains benefits in consolidating nonlife and life companies (i.e., the ability to offset some nonlife losses against life income). Also, as indicated, section 1.1502-47(m)(3)(vi), Income Tax Regs., is consistent with congressional intent to place some limits on the use of ineligible nonlife losses to reduce income of life companies. Further, under the regulations, ineligible losses of nonlife companies are not completely lost, and such losses may be carried back or forward and used to reduce consolidated taxable income of nonlife companies in other years. Sec. 1.1502-47(m)(3)(vii), Income Tax Regs.

For the reasons stated, we conclude that, for the years in issue, section 1.1502-47(m)(3)(vi), Income Tax Regs., applies to the companies that previously constituted members of the former INA and PHC Groups for purposes of calculating the amount of losses of the nonlife companies of the CIGNA Group that may be used to reduce the income of ConnLife. The CIGNA Group is required to treat each of the nonlife companies that previously

constituted members of the former INA and the former PHC Groups as a separate entity.

We also conclude that no factual matter remains in dispute that precludes our granting summary judgment in favor of respondent.

We have considered petitioners' other arguments and find them unpersuasive.

To reflect the foregoing,

<u>Appropriate orders and decisions will be entered for respondent</u>.