116 T.C. No. 3

UNITED STATES TAX COURT

AMERICAN AIR LIQUIDE, INC. AND SUBSIDIARIES, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 20381-98.                    Filed January 16, 2001.

P is the parent of a consolidated group that includes L. P's ultimate parent is L'Air, a French corporation. L'Air pays royalties to P and L under license agreements for intellectual property owned by P and L and used by L'Air outside the United States.

P treated the royalty income as sec. 904(d)(1)(I), I.R.C., general limitation income, relying on the "reserved" paragraph in sec. 1.904-5(i)(3), Income Tax Regs.; Article 24(3) of the U.S.-France Treaty, the capital nondiscrimination provision; and written statements of Treasury officials.

R determined the royalty income is sec. 904(d)(1)(A), I.R.C., passive income for the purpose of calculating P's foreign tax credit.

    Held: The royalty income is passive income for the
purpose of calculating P's foreign tax credit. Neither
alone nor in combination did the "reserved" paragraph
in sec. 1.904-5(i)(3), Income Tax Regs., Article 24(3)
of the U.S.-France Treaty, or written statements of
Treasury officials constitute an exception to sec.
904(d) entitling P to characterize the royalty income
as general limitation income.

E.A. Dominianni and Edmund S. Cohen, for petitioner.

Steven R. Winningham, Lydia A. Branche, and Rebecca I. Rosenberg, for respondent.

OPINION

LARO, Judge:  Respondent determined deficiencies in petitioner's Federal income taxes of $320,351, $1,083,746, and $942,456 for 1989, 1990, and 1991,[1] respectively.

This matter is before the Court on cross-motions for judgment on the pleadings under Rule 120(a).[2]  In support of its motion, petitioner attached exhibits to its response.  These exhibits require us to consider matters outside the pleadings, and as a consequence we have recharacterized the motions as cross-motions for summary judgment under Rule 121.  See Rule 120(b).

---

[1] In the petition, petitioner concedes that $160,196, $333,746, and $222,456 of the amounts determined as deficiencies in 1989, 1990, and 1991, respectively, are not in dispute.

[2] Rule references are to the Tax Court Rules of Practice and Procedure.  Unless otherwise indicated, section references and references to the Code are to the Internal Revenue Code in effect for the years in issue.

We must decide whether royalties received by petitioner, a domestic corporation, from its foreign parent should be classified as section 904(d)(1)(A) passive income or as section 904(d)(1)(I) general limitation income for purposes of determining petitioner's foreign tax credit. We hold that they are section 904(d)(1)(A) passive income.

## Background

Petitioner's principal place of business was located in Walnut Creek, California, when the petition was filed. American Air Liquide, Inc. (AAL), is the common parent of a group of corporations that filed consolidated returns in the years in issue. Liquid Air Corp. (LAC) is a member of AAL's affiliated group.

L'Air Liquide, S.A. (L'Air), is a French corporation that is the ultimate parent of petitioner. L'Air produces, sells, and distributes industrial gases, related equipment and services, and welding products throughout the world through its own operations in France and through its French and non-French subsidiaries.

In 1986, AAL acquired the LAC research facilities and rights to all technical information developed, or being developed, by LAC. Under various license agreements among AAL, LAC, and L'Air, AAL and LAC received royalties of $4,775,000, $5 million, and $4,800,000 from L'Air in 1989, 1990, and 1991, respectively. The royalties were paid by L'Air for nonexclusive, irrevocable, and

perpetual licenses to exploit, outside the United States, certain technical information developed (or to be developed) at LAC's research facility and certain improvements made (or to be made) to certain patent rights licensed to LAC by L'Air. On its tax returns for the years in issue, petitioner characterized the royalties received from L'Air as section 904(d)(1)(I) general limitation income for foreign tax credit purposes. On examination, respondent recharacterized the royalties as section 904(d)(1)(A) passive income. The deficiencies are a result of this recharacterization.

## Discussion

### A. Whether Summary Judgment Is Appropriate

Summary judgment is intended to expedite litigation and avoid unnecessary and expensive trials. See Northern Ind. Pub. Serv. Co. & Subs. v. Commissioner, 101 T.C. 294, 295 (1993); Florida Peach Corp. v. Commissioner, 90 T.C. 678, 681 (1988); Shiosaki v. Commissioner, 61 T.C. 861, 862 (1974). Summary judgment is appropriate where there is no genuine issue as to any material fact and a decision may be rendered as a matter of law. See Rule 121(b); Sundstrand Corp. v. Commissioner, 98 T.C. 518, 520 (1992), affd. 17 F.3d 965 (7th Cir. 1994); Jacklin v. Commissioner, 79 T.C. 340, 344 (1982). In deciding whether to grant summary judgment, the Court must consider the factual materials and inferences drawn from them in the light most

favorable to the nonmoving party. See Bond v. Commissioner, 100 T.C. 32, 36 (1993); Naftel v. Commissioner, 85 T.C. 527, 529 (1985).

The parties agree that for the purpose of deciding these cross-motions there are no genuine issues of material fact and that the Court may decide the issue as a matter of law. Hence, this case is ripe for summary judgment.

B.  Characterization of Royalty Income

The determination of the proper characterization of the royalty income requires an analysis of the following provisions: (1) Section 904, (2) section 1.904-5, Income Tax Regs., and (3) Article 24(3) of the Convention With Respect to Taxes on Income and Property, July 28, 1967, U.S.-Fr., T.I.A.S. 6518, as amended by Supplementary Protocols, Oct. 12, 1970, T.I.A.S. 7270; Nov. 24, 1978, T.I.A.S. 9500; Jan. 17, 1984, T.I.A.S. 11096; and June 16, 1988, T.I.A.S. 11967 (U.S.-France Treaty).

1.  Statutory Background

Pursuant to section 904(a), the amount of foreign tax credit allowable under section 901 may not exceed the same proportion of the tax against which such credit is claimed which the taxpayer's taxable income from sources without the United States bears to its entire taxable income for the same taxable year. See sec. 904(a). Under section 904, the allowable foreign tax credit is computed separately for each of the categories or baskets of

income listed in subparagraphs (A) through (I) of section

904(d)(1).[3]  We concern ourselves with two of these baskets.  The

first, subparagraph (I), is referred to as general limitation

income.  The other is subparagraph (A), referred to as passive

income.  In pertinent part, section 904(d)(2)(A) defines passive

income as "any income received or accrued by any person which is

of a kind which would be foreign personal holding company income

---

[3]  Sec. 904(d)(1) provides:

In general. The provisions of subsections (a), (b), and (c) and sections 902, 907, and 960 shall be applied separately with respect to each of the following items of income:

   (A)  passive income,

   (B)  high withholding tax interest,

   (C)  financial services income,

   (D)  shipping income,

   (E)  in the case of a corporation, dividends
        from each noncontrolled section 902
        corporation,

   (F)  dividends from a DISC or former DISC (as
        defined in section 992(a)) to the extent
        such dividends are treated as income
        from sources without the United States,

   (G)  taxable income attributed to foreign
        trade income (within the meaning of
        section 923(b)),

   (H)  [certain] distributions from a FSC...,
        and

   (I)  income other than income described in
        any of the preceding subparagraphs.

(as defined in section 954(c))."  Subparagraph (A) of section 954(c)(1) defines "foreign personal holding company income" to include "Dividends, interest, royalties, rents, and annuities."

Respondent focuses on the facts that section 904(a)(1) places passive income into a passive basket and that "royalties" are specifically referred to in section 954(c)(1) as a type of passive income.  Petitioner expands on this focus by reference to section 904(d)(3)(C) and section 1.904-5, Income Tax Regs., which together apply a look-through rule in the case of controlled foreign corporations and other entities.  Section 904(d)(3)(C) provides:

> Any interest, rent, or royalty which is received or accrued from a controlled foreign corporation in which the taxpayer is a United States shareholder shall be treated as income in a separate category to the extent it is allocable (under regulations prescribed by the Secretary) to income of the controlled foreign corporation.

Section 1.904-5(b), Income Tax Regs., provides:

> In general.  Except as otherwise provided in section 904(d)(3) and this section, dividends, interest, rents, and royalties received or accrued by a taxpayer from a controlled foreign corporation in which the taxpayer is a United States shareholder shall be treated as general limitation income.

Section 1.904-5(i)(3), Income Tax Regs., is also relevant to petitioner's analysis.  It is entitled "Special rule for payments from foreign parents to domestic subsidiaries" and contains no text.  The Secretary explicitly "[RESERVED]" the rules under that provision during the years in issue.  In 1992 the Secretary

promulgated new final regulations which omitted the reserved
paragraph.  The preamble to the new final regulations states that
the Commissioner had decided not to adopt rules which look
through payments from foreign parents to U.S. subsidiaries
because of administrative and policy concerns.  The preamble
states:

> To apply the look-through rules, the Service needs
> complete information concerning the foreign
> corporation's income and expenses.  The Service may not
> be able to obtain all of the necessary information from
> a foreign parent corporation and to audit it.  In
> addition, the payments generally would be deductible
> from taxable income of the payor that is entirely
> outside the jurisdiction of the United States
> (including subpart F) and, therefore, do not give rise
> to the same concerns involved in other look-through
> cases. [T.D. 8412, 1992-1 C.B. 273 (preamble to the
> 1992 final regulations).]

Petitioner further relies on the U.S.-France Treaty and more
specifically the nondiscrimination provision embodied in Article
24(3), which provides:

> A corporation of a Contracting State, the capital of
> which is wholly or partly owned or controlled, directly
> or indirectly, by one or more residents of the other
> Contracting State, shall not be subjected in the first-
> mentioned Contracting State to any taxation or any
> requirement connected therewith which is other or more
> burdensome than the taxation and connected requirements
> to which a corporation of that first-mentioned
> Contracting State carrying on the same activities, the
> capital of which is wholly owned by one or more
> residents of that first-mentioned State, is or may be
> subjected.

Unless there is a reason to disregard the general rule of
section 904(d), petitioner's royalties from L'Air should be

characterized as passive income for the purpose of computing petitioner's foreign tax credit limitation.

2.   Petitioner's Position That Royalties Received Are General Limitation Income

Petitioner makes three arguments in support of its position that the royalties received should not be treated as passive income.  Firstly, petitioner argues, treating royalties received from L'Air as passive basket income impermissibly discriminates against petitioner in violation of the nondiscrimination article of the U.S.-France Treaty.  Secondly, petitioner argues, the "reserved" paragraph in section 1.904-5(i)(3) Income Tax Regs., when read in the relevant regulatory context and in light of public written statements, mandates that royalties such as those at issue be categorized as general limitation income.  Thirdly, petitioner argues, senior Treasury officials have stated clearly in writing that the Department of the Treasury will shortly issue regulations under which the subject royalties are categorized as general limitation income.  To date, no such retroactive regulations have been issued.  However, on January 3, 2001, the Department of the Treasury published proposed rules that, among other things, "propose to amend prospectively § 1.904-4(b)(2)", Income Tax Regs.  66 Fed. Reg. 319, 320 (emphasis added).  The supplementary information accompanying the proposed regulation states:

Treasury and the IRS have consistently declined to extend

> look-through treatment to payments from foreign non-
> controlled payors.  See TD 8412 (1992-1 C.B. 271, 273).
> Treasury and the IRS continue to believe that the nature of
> the income earned by a foreign non-controlled payor from the
> use of the licensed property should not determine whether a
> rent or royalty payment constitutes income from the active
> conduct of a trade or business of the recipient. [Id.]

The supplementary information accompanying the proposed

regulation strongly supports respondent's position in the instant

case.  Further, we find no support for petitioner's arguments

contained in the proposed regulations.

C.  Analysis

1.  Interaction of Code and U.S.-France Treaty Provision

Under the U.S. Constitution, treaties are given equal status

with laws passed by Congress.  See U.S. Const., art. VI, sec. 1,

cl. 2.  A treaty is to be liberally construed to give effect to

the purpose which animates it.  See United States v. Stuart, 489

U.S. 353, 368 (1989); Bacardi Corp. of Am. v. Domenech, 311 U.S.

150, 163 (1940).  When a provision of a treaty fairly admits of

two constructions, one restricting, the other enlarging, rights

which may be claimed under it, the more liberal interpretation is

to be preferred.  See United States v. Stuart, supra at 368;

Bacardi Corp. of Am. v. Domenech, supra; Samann v. Commissioner,

36 T.C. 1011, 1014-1015 (1961), affd. 313 F.2d 461 (4th Cir.

1963).  In construing a treaty, the Court gives the language its

ordinary meaning in the context of the treaty, unless a more

restricted sense is clearly intended.  See De Geofroy v. Riggs,

133 U.S. 258, 271 (1890). When a treaty and a statute relate to the same subject, courts attempt to construe them so as to give effect to both, see Whitney v. Robertson, 124 U.S. 190, 194 (1888), because "the intention to abrogate or modify a treaty is not to be lightly imputed to the Congress", Menominee Tribe v. United States, 391 U.S. 404, 413 (1968) (quoting Pigeon River Co. v. Cox Co., 291 U.S. 138, 160 (1934)); see also Estate of Burghardt v. Commissioner, 80 T.C. 705, 713 (1983), affd. without published opinion 734 F.2d 3 (3d Cir. 1984).

Petitioner argues that the characterization of royalty income under section 904 must be identical for royalties received by a U.S. subsidiary from a foreign parent corporation and royalties received by a domestic corporation from a controlled foreign corporation. Petitioner argues that to not characterize its royalty income from L'Air as section 904(d)(1)(I) general limitation income would violate Article 24(3) of the U.S.-France Treaty. Petitioner cites the deficiency itself as evidence of the detriment it suffers because respondent treats the royalty income as passive income rather than general limitation income. We disagree with petitioner's analysis. Petitioner's analysis ignores the differences in the tax treatment, imposed by subpart F, sections 951 to 964, of the Code, and consequently the circumstances of the respective taxpayers mentioned.

Article 24(3), which corresponds to Article 24(5) of the

current OECD model convention, is a means "to ensure equal treatment for taxpayers residing in the same State."  I Model Tax Convention On Income and On Capital, Article 24, par. 5, 57 (OECD Nov. 1977).  Petitioner is a domestic corporation, and the tax treatment of its foreign source royalty income is determined in exactly the same manner as for any other domestic corporation receiving royalty income from a noncontrolled foreign corporation.  Petitioner has received equal treatment with all other similarly situated taxpayers residing in the United States. The fact that petitioner's ultimate parent is a French corporation plays no part in determining the characterization of petitioner's royalty income.  Consequently, we do not find any basis for petitioner's assertion that respondent's alleged failure to characterize petitioner's royalty income as section 904(d)(1)(I) general limitation income contravenes Article 24(3) of the U.S.-France Treaty.

2.  The "Reserved" Paragraph and Treasury Representations

For convenience, we will examine petitioner's second and third arguments together.  Petitioner's reliance on the "reserved" paragraph in section 1.904-5(i)(3), Income Tax Regs., is also misplaced.  In Connecticut Gen. Life Ins. Co. v. Commissioner, 109 T.C. 100, 110 (1997), affd. 177 F.3d 136 (3d Cir. 1999), we held in similar circumstances that a reserved paragraph in a regulation "simply reserves a space for

regulations that may be promulgated at a later date and that <u>may</u> provide a special rule". (Emphasis added). The Court of Appeals for the Third Circuit when discussing the same reserved provision stated:

> the Office of the Federal Register, Document Drafting Handbook (1991), * * * describes "reserved" as "a term used to maintain the continuity of codification in the CFR" or "to indicate where future text will be added." Id. at 27. We find nothing in the precedent that * * *[the taxpayer] cites to preclude the Commissioner from using the term "reserved" in accordance with the Document Drafting Handbook, rather than to connote the absence of a substantive rule. [<u>Connecticut Gen. Life Ins. Co. v. Commissioner</u>, 177 F.3d at 145.]

We see no reason to take a different view in this case. The reserved paragraph as a general rule only indicates a place mark in the regulation that is reserved to preserve continuity of codification where the Department of the Treasury is considering its position.

Petitioner, in its memorandum of law in support, seeks to distinguish <u>Connecticut Gen. Life Ins. Co. v. Commissioner</u>, <u>supra</u>, on the basis that unlike the facts in that case, in the instant case, "the meaning ascribed to the Reserved Paragraph by the Petitioner is unambiguously supported by numerous public written statements of similarly affected taxpayers, and is not contradicted in any of numerous public statements made by senior Treasury Department and other governmental officials addressing the issue". Petitioner attached to its response to respondent's motion for judgment on the pleadings exhibits A through H. These

exhibits contain correspondence on the Department of the Treasury letterhead, and correspondence to the Department of the Treasury. Taken together, and viewed in the light most favorable to petitioner, we are unable to conclude that they represent anything more than confirmation that the Department of the Treasury was considering whether to extend look-through treatment to domestic subsidiaries with foreign parents.

Accordingly,

An appropriate order will be entered granting respondent's motion for summary judgment and denying petitioner's motion for summary judgment. Decision will be entered for respondent.