T.C. Summary Opinion 2018-2

UNITED STATES TAX COURT

EVGENY KISELEV, Petitioner <u>v.</u>
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 30054-14S.                    Filed January 10, 2018.

Evgeny Kiselev, pro se.

<u>Rachel L. Rollins</u>, for respondent.

SUMMARY OPINION

COLVIN, <u>Judge</u>:  This case was heard pursuant to the provisions of section

7463 of the Internal Revenue Code in effect when the petition was filed.[1]

<hr>

[1]Section references are to the Internal Revenue Code, as amended and in effect for the year at issue.  Rule references are to the Tax Court Rules of Practice and Procedure.  Monetary amounts are rounded to the nearest dollar.

Pursuant to section 7463(b), the decision to be entered is not reviewable by any other court, and this opinion shall not be treated as precedent for any other case.

Respondent determined a deficiency in petitioner's Federal income tax for 2011 of $2,316 and an accuracy-related penalty under section 6662(a) of $463. Respondent has since conceded that petitioner is not liable for the penalty.

After concessions, the issue for decision is whether (and if so, to what extent) payments in 2011 from Purdue University to petitioner to fund his work on his scientific research proposals are exempt from Federal income tax under article 18 of the Convention for the Avoidance of Double Taxation and the Prevention of Fiscal Evasion With Respect to Taxes on Income and Capital, Russia-U.S., June 17, 1992, as amended by the Protocol signed on June 17, 1992, 6 Tax Treaties (CCH) para. 8003 (Treaty).  We hold that the payments are exempt from Federal income tax to the extent discussed below.[2]

---

[2]On November 30, 2017, the Court filed its opinion in <u>Dovzhenok v. Commissioner</u>, T.C. Summary Opinion 2017-86, which as noted therein may not be treated as precedent.  That case also involves application of the Convention for the Avoidance of Double Taxation and the Prevention of Fiscal Evasion With Respect to Taxes on Income and Capital, Russia-U.S., June 17, 1992, as amended by the Protocol signed on June 17, 1992, 6 Tax Treaties (CCH) para. 8003. However, in <u>Dovzhenok</u> we reached a different result on facts than are different from those in this case.

## Background

Some of the facts have been stipulated and are so found. Petitioner resided in Maryland when he filed the petition.

A.    Petitioner's Presence in the United States and Immigration Status

Petitioner is a citizen of the Russian Federation. He arrived in the United States from the Russian Federation in August 2005 on a J-2 visa as the dependent spouse of his wife, who received a J-1 visa sponsored by Purdue University. Under the terms of his J-2 visa, petitioner's ability to enroll in an education program was subject to further approval and was not assured when he entered the United States. Petitioner applied for and was granted an employment authorization card which was valid from November 2005 through May 2009.

On December 12, 2008, petitioner's visa was changed from a J-2 visa to an F-1 visa for students. Petitioner was present in the United States for substantially all of 2011, and he and his wife filed applications to become resident aliens during that year. Petitioner remained in F-1 status for more than three years until January 31, 2012, when he and his wife became permanent residents of the United States.

B.    Petitioner's Employment and Enrollment in a Ph.D. Program

Petitioner worked as a laboratory technician at Purdue beginning in fall 2005 and continuing through fall 2007. Petitioner was admitted to a Ph.D.

program at Purdue on January 10, 2006. Petitioner was a full-time graduate student at Purdue from fall 2007 through May 2012.

As required by his Ph.D. program, during 2011 petitioner was employed by the university as a graduate research assistant and conducted supervised research which culminated in the preparation and defense of a Ph.D. thesis. Petitioner conducted research and pursued his degree under the supervision of Professor Mark Cushman.

Graduate students who perform supervised research for the university receive financial remuneration, including tuition remission, a stipend, and subsidized health insurance. The university considers these individuals university employees.

C.   The Grant Programs

During 2011 petitioner's stipend included, inter alia, (1) a Purdue Research Foundation Research (PRFR) Grant and (2) a Special Incentive Research (SIR) Grant. Those grants were made to fund specific research proposals prepared by petitioner.

1.   Purdue Research Foundation Research Grant

PRFR grants are nominally awarded to university faculty but are paid solely to fund a research proposal developed by a research assistant who assists the

faculty member. Research assistants receive the grants in the form of a salary and fringe benefits. A faculty member who applies for a PRFR grant must provide the name of a qualified student and a proposal containing a statement of the problem to be researched, the significance of the problem, and the plan of research.

Professor Cushman submitted an application for a PRFR grant for 2011 which identified petitioner as the student to be supported by the grant. Petitioner prepared the scientific proposal for the PRFR grant application, which reflected his own scientific vision. In April 2010 Professor Cushman received a letter which stated that the grant had been awarded to him.

PRFR grants equal one-half of the minimum annual salary paid to a qualified graduate research assistant. The PRFR grant totaled $16,795 ($15,750 in salary and $1,045 in fringe benefits) to be paid to petitioner from September 15, 2010, through September 14, 2011.

2. Special Incentive Research Grant

Special Incentive Research Grants (SIR grants) benefit faculty members by supporting outstanding graduate students whom they supervise and who are undertaking cancer-related research. In a call for proposals for SIR grants for 2011, the Purdue University Center for Cancer Research solicited nominations for outstanding Ph.D. degree candidates undertaking cancer-related research. The call

for proposals referred to the graduate student who applied for the grant as the awardee of the grant. Either the student, a faculty member, or both may apply for an SIR grant.

Professor Cushman submitted an application for an SIR grant. Petitioner prepared the scientific proposal in the application. The application stated that Professor Cushman would be the recipient, but the grant was paid to petitioner as salary.

In May 2011 petitioner received a letter stating that the SIR grant application had been approved. During 2011 petitioner conducted the research described in the PRFR and SIR grant applications and presented the results in the publicly available peer-reviewed scientific journal.

3.    Summary

During 2011 petitioner received a stipend of approximately $22,000 from the university. Approximately 70% of petitioner's stipend during 2011 was funded by the PRFR and SIR grants. Petitioner's stipend for 2011 was in the same amount as it would have been without the grants.

D.    Petitioner's 2011 Tax Return

For 2011 Purdue University withheld Federal income tax of $2,005 from petitioner's stipend which was reported on Form W-2, Wage and Tax Statement.

On a Form 1040NR-EZ, U.S. Income Tax Return for Certain Nonresident Aliens With No Dependents, for 2011, petitioner reported that his stipend is exempt from U.S. Federal income tax under article 18 of the Treaty. Petitioner requested a refund of the Federal income tax withheld, and respondent issued petitioner a refund on March 12, 2012. In a notice of deficiency respondent determined that petitioner's stipend for 2011 is taxable.

## Discussion

### A. Burden of Proof

The taxpayer generally bears the burden of proving that the Commissioner's deficiency determination is in error. Rule 142(a)(1). The burden of proving a factual issue relating to tax liability shifts to the Commissioner under certain circumstances. Sec. 7491(a). Because we decide this case on a preponderance of the evidence, the burden of proof does not affect the result and we need not further consider it. See sec. 7491(a); Estate of Turner v. Commissioner, 138 T.C. 306, 309 (2012).

### B. The Treaty

Article 18 of the Treaty, titled Students, Trainees, Researchers, provides as follows:

1. An individual who is a resident of a Contracting State at the beginning of his visit to the other Contracting State and who is temporarily present in that other State for the primary purpose of:

\*　　\*　　\*　　\*　　\*　　\*　　\*

(c) studying or doing research as a recipient of a grant, allowance, or other similar payments from a governmental, religious, charitable, scientific, literary, or educational organization,

shall be exempt from tax by that other State with respect to payments from abroad for the purpose of his maintenance, education, study, research, or training, and with respect to the grant, allowance, or other similar payments.

2. The exemption in paragraph 1 shall apply only for such period of time as is ordinarily necessary to complete the study, training or research, except that no exemption for training or research shall extend for a period exceeding five years.

3. This Article shall not apply to income from research if such research is undertaken not in the public interest but primarily for the private benefit of a specific person or persons.

When interpreting a treaty, we begin with the text of the treaty and the context in which the written words are used. Bhutta v. Commissioner, 145 T.C. 351, 360 (2015) (citing E. Airlines, Inc. v. Floyd, 499 U.S. 530, 534 (1991), and Sumitomo Shoji Am., Inc. v. Avagliano, 457 U.S. 176, 179-180 (1982)). The plain meaning of the text of a treaty controls unless its effect is contrary to the intent or expectations of the signatories. Bhutta v. Commissioner, 145 T.C. at 360 (citing Sanchez-Llamas v. Oregon, 548 U.S. 331, 346 (2006), Sumitomo Shoji

Am., Inc., 457 U.S. at 180, and Amaral v. Commissioner, 90 T.C. 802, 812 (1988)).

The two textual issues in dispute are (1) whether petitioner was "temporarily present [in the United States] * * * for the primary purpose of studying or doing research" and (2) whether he was "a recipient of a grant, allowance, or other similar payments". We discuss those textual issues infra Parts E and F. However, first we consider an argument raised by respondent based on article 3(2) of the Treaty.

C.     Whether To Apply Section 117 ("Qualified Scholarships") or Related Caselaw in Construing Article 18

Article 3(2) of the Treaty provides:

> 2.     As regards the application of the Convention by a Contracting State, any term not defined therein shall, unless the context otherwise requires or the competent authorities agree to a common meaning pursuant to the provisions of Article 24 (Mutual Agreement Procedure), have the meaning which it has under the laws of that State concerning the taxes to which this Convention applies. [Emphasis added.]

Under article 3(2), an undefined term in the Treaty is given the meaning it has under U.S. tax law. The phrase "grant, allowance, or other similar payments" is not defined by the treaty. Thus, under article 3(2), the phrase "grant, allowance, or other similar payments" is given the meaning it has under U.S. tax law. However,

neither that phrase nor a remnant thereof ("grant, allowance") appears in title 26 or the regulations thereunder. Because the Treaty phrase does not appear in U.S. tax law, we are unable to discern, or apply, the meaning of that phrase under U.S. tax law in construing article 18.

Respondent does not contend that the Treaty draftspersons intended to mean "scholarship" when they used the broader phrase "grant, allowance, or similar payment". Respondent contends, however, that we should consider the definition of "scholarship" in section 117 ("Qualified Scholarships") in construing "grant, allowance, or other similar payments". Under section 117, "qualified scholarships" are excluded from gross income. Section 117(b)(1) defines "qualified scholarship" as follows:

> The term "qualified scholarship" means any amount received by an individual as a scholarship or fellowship grant to the extent the individual establishes that, in accordance with the conditions of the grant, such amount was used for qualified tuition and related expenses.

Section 117 uses the word "grant" in defining "qualified scholarship". But section 117 does not define "grant" or use the additional words in the phrase at issue here, "allowance, or other similar payments", that broaden the scope of article 18 beyond a "grant".

Under caselaw established before the enactment of section 117 in its present form, the Supreme Court said that scholarships are paid on a "no-strings" basis. Bingler v. Johnson, 394 U.S. 741, 751 (1969).[3]  A grant, however, may (as with the PRFR and SIR grants at issue here) be provided specifically to undertake specific research proposed by the grantee.  If a grant is made to fund specific research, then, upon the award of the grant the recipient of that grant would reasonably be expected to conduct that research.  Thus, unlike scholarships, some grants may come with "strings", and the term "grant" includes at least some arrangements unlike "scholarships" as described by the Supreme Court in Bingler.  Because U.S. tax law does not use or provide a meaning of the Treaty phrase at issue, "grant, allowance, or other similar payments", article 3(2) does not direct us to apply U.S. law in construing that phrase.

D.  Whether Petitioner Was Temporarily Present in the United States for the "Primary Purpose of Studying or Doing Research"

As stated above, the two textual issues in dispute are (1) whether petitioner was "temporarily present * * * for the primary purpose of studying or doing

---

[3]Like the current verison of sec. 117, its predecessor did not include, much less define, the Treaty phrase at issue here.  Neither did the Supreme Court.  Thus, by its terms, article 3(2) does not cause us to consider Bingler v. Johnson, 394 U.S. 741 (1969), in deciding the meaning of "grant, allowance, or other similar payments."

research" and (2) whether he was "a recipient of a grant, allowance, or other similar payments". We next consider whether petitioner was "temporarily present in * * * [the United States] for the primary purpose of studying or doing research".

Petitioner was admitted to a Ph.D. program five months after he arrived in the United States in 2005, and he remained in that program for more than five years until he was granted permanent resident status in 2012. This chronology shows that petitioner was engaged in study and research during almost all of the time he was in the United States before becoming a permanent resident.

Respondent contends that petitioner's "primary purpose" is determined by his initial purpose when he came to the United States in 2005. Respondent points out that upon petitioner's entry to the United States in August 2005, petitioner's visa status was J-2 (as the dependent spouse of his wife) and that, even though he was admitted to a Ph.D. program in January 2006, his visa status did not change to F-1 (for students) until December 12, 2008.

We disagree that the "primary purpose" of petitioner's stay in the United States from 2005 until 2011 can be learned solely by considering his intent when he arrived here or the range of activities allowed under his original J-2 visa. Instead, to consider his "primary purpose" we will consider all of the facts and circumstances relating to his activities during the more than five years he was a

temporary U.S. resident.  See Bhutta v. Commissioner, 145 T.C. at 363 (stating that the Court examines the entire record and considers all of the relevant facts and circumstances to discern a taxpayer's primary purpose in coming to the United States).  We conclude that petitioner's primary purpose during his period of temporary residence in the United States was to study and perform research.  The record shows that his primary purpose during those years, for purposes of article 18, was study and research.

E.      Whether Petitioner "Received a Grant, Allowance, or Other Similar Payments"

The other textual issue in dispute is whether petitioner "received a grant, allowance, or other similar payments" in 2011.

        1.      Whether Payments Under the PRFR and SIR Programs Are Grants, Allowances, or Similar Payments

Respondent contends that neither PRFR grants nor SIR grants are grants, allowances, or similar payments.  In construing a treaty, the Court gives the language its ordinary meaning in the context of the Treaty unless a more restricted sense is clearly intended.  See Am. Air Liquide, Inc. & Subs. v. Commissioner, 116 T.C. 23, 29 (2001) (citing De Geofroy v. Riggs, 133 U.S. 258, 271 (1890)).  "Grant" has been broadly defined as an amount of funds given for a specific purpose.  See American Heritage Dictionary 765 (4th ed. 2006).  We see no reason

based on article 18 to narrow this definition, particularly because the drafters of article 18 included "grant" in the broader phrase "allowance, or other similar payments". Respondent has provided no persuasive reason for us to conclude that the payments petitioner received under the PRFR and SIR programs were not "grants, allowances, or other similar payments".

2. Whether Petitioner "Received" a Grant, Allowance, or Similar Payment

Respondent argues that Professor Cushman (not petitioner) was the recipient of the PRFR and SIR grants and that because he was a salaried employee, petitioner did not receive grants. Respondent points out that Purdue disburses funding for PRFR and SIR grants in part to assist Purdue faculty; that Professor Cushman signed the applications for the PRFR and SIR grants; that petitioner could not have applied for them on his own; that the award letter for the PRFR grant was issued to Professor Cushman; that Professor Cushman benefited from supervising a research assistant; and that petitioner received a salary.

We disagree with respondent's contention that petitioner did not receive the PRFR and SIR grants. Whatever role Professor Cushman had in obtaining the grants and whatever benefits he received from supervising a research assistant, the grants were paid to petitioner to fund his work on his research proposals. Article

18 provides no support for respondent's contention that a grant may not be paid as a salary or that a grantee may not be an employee. We conclude that petitioner was the "recipient" of the PRFR and SIR grants for purposes of article 18.

F.    Whether Petitioner Fails To Qualify Under Article 18 Because He Was Not a Resident of the Russian Federation Immediately Before He Was Present in the United States as a Student

Respondent contends that petitioner is not eligible under article 18 because he was not a resident of the Russian Federation immediately before he became a student in 2007. We disagree; as discussed next, it appears that respondent's argument embellishes two separate phrases in article 18.

Article 18 provides in pertinent part that

> [a]n individual who is a resident of a Contracting State at the beginning of his visit to the other Contracting State and who is temporarily present in that other State for the primary purpose of * * * (c) studying or doing research * * * shall be exempt from tax by that other State * * *

Article 18 does not say that, to qualify, an individual must be a resident of the other contracting state immediately before becoming a U.S. student. Expressed in terms of the facts of this case, article 18 requires petitioner to have been a resident of the Russian Federation at the beginning of his visit to the United States. Petitioner clearly was a resident of the Russian Federation when he came

to United States in August 2005. Therefore, petitioner does not fail to qualify because of this provision.

Article 18 also requires petitioner to have been temporarily present in the United States for the primary purpose of studying or doing research. Petitioner was temporarily present in the United States from August 2005 through the tax year at issue, 2011, and his primary purpose for being in the United States from fall 2007 through 2011 was to study or do research. Petitioner did not become a permanent resident until he received a green card on January 31, 2012. Therefore, petitioner does not fail to qualify under article 18 because of this requirement.

Respondent points out the definition of "resident" in section 7701(b)(5)(A) and that days spent in the United States as a student are generally disregarded in counting the length of time a noncitizen is a U.S. resident. In deciding petitioner's eligibility under article 18, we need not consider petitioner's status as a U.S. resident for two reasons. First, respondent points out that the result of this case is not affected by whether petitioner is a U.S. resident.

Second, while article 18 requires petitioner to have been a resident of the Russian Federation before coming to the United States, it does not refer to petitioner's status as a U.S. resident. Instead, to qualify under article 18, it requires petitioner to have been "temporarily present" in the United States. Thus,

our application of article 18 is not affected by the definition of U.S. resident in section 7701.

G.    Conclusion

Approximately 70% of petitioner's stipend paid during 2011 was funded through the PRFR and SIR grants and is excludible from U.S. tax under article 18. The parties agree that the remaining 30% of his salary is taxable to petitioner.

To reflect the foregoing,

Decision will be entered under

Rule 155.