

1996 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

6-24-1996

# Tate & Lyle Inc v. Commissioner IRS

Precedential or Non-Precedential:

Docket 95-7253

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1996

## Recommended Citation

"Tate & Lyle Inc v. Commissioner IRS" (1996). *1996 Decisions.* Paper 160.
http://digitalcommons.law.villanova.edu/thirdcircuit_1996/160

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1996 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

TATE & LYLE INC. AND SUBSIDIARIES

v.

COMMISSIONER OF INTERNAL REVENUE SERVICE,

Appellant
_____

Appeal from the United States Tax Court
(No. 92-00740)
_____

Argued
April 25, 1996
Before:  MANSMANN, ALITO and LEWIS, Circuit Judges.

(Filed June 24, 1996)
_____

Henry B. Miller, Esquire
Burt, Maner & Miller
1300 Eye Street, N.W.
975 East Tower
Washington, DC  20005

        COUNSEL FOR APPELLEE

Gary R. Allen, Esquire
Kenneth L. Greene, Esquire
Thomas J. Clark, Esquire (ARGUED)
United States Department of Justice
Tax Division
P.O. Box 502
Washington, DC  20044

        COUNSEL FOR APPELLANT

Robert H. Aland, Esquire (ARGUED)
Gregg D. Lemein, Esquire
Michael A. Pollard, Esquire
Baker & McKenzie
One Prudential Plaza
130 East Randolph Drive
Chicago, IL  60601-6384

Jeffrey M. O'Donnell, Esquire
Baker & McKenzie
815 Connecticut Avenue, N.W.
Washington, DC  20006-4078

COUNSEL FOR AMICI CURIAE
_____

OPINION OF THE COURT
_____

MANSMANN,  Circuit Judge.

In this appeal, the Commissioner has asked us to review a ruling which allowed a United States taxpayer to deduct interest owed to a related foreign payee when it was accrued rather than paid.  Specifically, we must determine whether the United States Tax Court erred in holding that Treas. Reg. 1.267(a)-3 is invalid to the extent that it requires accrual basis taxpayers to defer deductions for interest owed to a related foreign payee until the year the interest is paid.  Also at issue is whether, assuming Treas. Reg.  1.267(a)-3 is valid, retroactive application of the regulation violates the Due Process Clause of the Fifth Amendment.

Because we find that Treas. Reg.  1.267(a)-3 is a valid exercise of the powers delegated to the Secretary under I.R.C.  267(a)(3), and that retroactive application of the regulation to the taxpayer does not violate due process, we will reverse the decision of the Tax Court.

I.

The following facts were stipulated by the parties before the United States Tax Court.  The taxpayer is an affiliated group of corporations of which Tate and Lyle, Inc. (TLI) is the common parent, and Refined Sugars, Inc. (RSI), is a wholly owned subsidiary.  Both TLI and RSI are United States corporations and were included on the taxpayer's consolidated federal income tax returns for the tax years at issue.  Tate and Lyle plc (PLC) is a United Kingdom corporation which indirectly owns 100% of TLI and RSI.  The taxpayer and PLC are members of the same controlled group of corporations as defined in I.R.C. 267(f).

PLC made interest-bearing loans to TLI and RSI, the tax consequence of which was interest expense to the taxpayer and interest income to PLC.  The taxpayer and PLC report income and deductions using the accrual method of accounting.  On its U.S income tax returns, the taxpayer deducted interest expense owed to PLC by TLI and RSI in the year it accrued.  The taxpayer did not pay the interest to PLC until the year following the year of accrual.

The interest income received by PLC was U.S. source income not effectively connected with a trade or business in the United States.  Under I.R.C.  881(a)(1), such income is subject to U.S. tax at a rate of 30%.  Pursuant to Article 11(1) of the

United States-United Kingdom Income Tax Convention (treaty), 31 U.S.T. 5668, which was in effect at all times here, the interest income received by PLC was exempt from United States tax.

The Commissioner disallowed the taxpayer's deduction for interest expense in the years accrued and subsequently mailed to the taxpayer notices of deficiency for the tax years ended September 29, 1985, September 28, 1986, and September 26, 1987. In response to the notices of deficiency, the taxpayer filed a petition in the United States Tax Court challenging the Commissioner's determination.

The following facts, not part of the stipulation, are evident from the record. The Commissioner asserted before the Tax Court that I.R.C. 267(a)(2) and (a)(3) and Treas. Reg. 1.267(a)-3 allow payor a deduction for interest only in the tax year when the related payee would normally report the interest as income for United States tax purposes. Normally, interest income received by a foreign corporation from sources within the United States and which is not effectively connected with a trade or business in this country, is reported on the cash basis method of accounting under I.R.C. 881 and 1442. The Commissioner determined that the taxpayer was entitled to deduct interest only in the year it paid the interest to PLC.

The Tax Court held that because the accrued interest was not includable in PLC's income because of an exemption under the tax treaty rather than as a result of PLC's method of accounting, Treas. Reg. 1.267(a)-3 was invalid because it did not apply the matching principle of I.R.C. 267(a)(2). A four-judge plurality determined that even if the provisions of Treas. Reg. 1.267(a)-3 were found to be within the broad regulatory authority granted by I.R.C. 267(a)(3), the retroactive application of the regulation violated the Due Process Clause of the Fifth Amendment. Accordingly, the Tax Court found that the taxpayer was not required to defer its interest deduction until it actually paid the interest.

The Commissioner appeals to us from the final decision of the Tax Court entered on February 13, 1995. We have jurisdiction under I.R.C. 7482(a). See Lerman v. Commissioner, 939 F.2d 44, 45 (3d Cir.), cert. denied, 502 U.S. 984 (1991).

II.

We turn first to the issue of whether Treas. Reg. 1.267(a)-3 is a valid interpretation of I.R.C. 267(a)(3). The validity of a treasury regulation is a question of law over which we exercise plenary review. Mazzocchi Bus Co., Inc. v. Commissioner, 14 F.3d 923, 927 (3d Cir. 1994).

As amended in 1984, I.R.C. 267(a)(2) provides for a matching of interest deductions and income where, in the case of related persons, the payor is an accrual basis taxpayer and the payee is on a cash basis method of accounting. Section 267(a)(2) specifically provides:

> (2) Matching of deduction and payee income item in the case of expenses and interest.
> -- If --

(A) by reason of the method of accounting of the person to whom the payment is to be made, the amount thereof is not (unless paid) includible in the gross income of such person, and

(B) at the close of the taxable year of the taxpayer for which (but for this paragraph) the amount would be deductible under this chapter, both the taxpayer and the person to whom the payment is to be made are persons specified in any of the paragraphs of subsection (b),

then any deduction allowable under this chapter in respect of such amount shall be allowable as of the day as of which such amount is includible in the gross income of the person to whom the payment is made (or, if later, as of the day on which it would be so allowable but for this paragraph). . . .

Section 267(a)(2), as amended in 1984, applied to interest allowable as a deduction for taxable years beginning after December 31, 1983. Deficit Reduction Act of 1984, Pub. L. No. 98-369, 174(c), 98 Stat. 494, 708.

The purpose behind the 1984 amendment was to require related persons "to use the same accounting method with respect to transactions between themselves in order to prevent the allowance of a deduction without the corresponding inclusion in income." H. Rep. No. 98-432, 98th Cong., 2nd Sess., reprinted in1984 U.S.C.C.A.N. 697, 1206. The Ways and Means Committee further stated that "[t]he failure to use the same accounting method with respect to one transaction involves unwarranted tax benefits, especially where payments are delayed for a long period of time, and in fact may never be paid." Id. Congress thus amended section 267(a)(2) to require an accrual basis taxpayer to deduct interest owed to a related cash basis taxpayer when payment is made. Id. Congress explained that "[i]n other words, the deduction by the payor will be allowed no earlier than when the corresponding income is recognized by the payee." Id.

In 1986, Congress again amended section 267, this time to add subsection (a)(3) because it felt that the matching provision of section 267(a)(2) was "unclear when the related payee was a foreign person that does not, for many Code purposes, include in gross income foreign source income that is not effectively connected with a U.S. trade or business." S. Rep. No. 99-313, 99th Cong., 2nd Sess. at 959, reprinted in 1986-3 C.B. (Vol. 3) 1, 959. Section 267(a)(3) reads as follows:

(3) Payments to foreign persons.--The Secretary shall by regulations apply the matching principle of paragraph (2) in cases

in which the person to whom the payment is to be made is not a United States person.

Like section 267(a)(2), section 267(a)(3) was made retroactive to taxable years beginning after December 31, 1983. Tax Reform Act of 1986, Pub. L. No. 99-514, 1881, 100 Stat. 2085, 2914.

In accordance with section 267(a)(3), the Secretary issued final regulations on December 31, 1992. T.D. 8465, 1992-2 C.B. 12. Treas. Reg. 1.267(a)-3(b)(1) sets forth the following general rule:

section 267(a)(3) requires a taxpayer to use the cash method of accounting with respect to the deduction of amounts owed to a related foreign person. An amount that is owed to a related foreign person and that is otherwise deductible under Chapter 1 thus may not be deducted by the taxpayer until such amount is paid to the related foreign person. . . . An amount is treated as paid for purposes of this section if the amount is considered paid for purposes of section 1441 or section 1442 (including an amount taken into account pursuant to section 884(f)).

Treas. Reg. 1.267(a)-3(c) provides certain exceptions and special rules to paragraph (b) of this section. Paragraph (c)(1), which applies to income that is effectively connected with the conduct of a United States trade or business of a related foreign person, does not apply if the related foreign person is exempt from United States income tax on the amount owed pursuant to a tax treaty. Paragraph (c)(2) addresses the treatment of items exempt from tax because of a tax treaty. Specifically, paragraph (c)(2) requires that:

Interest that is not effectively connected income of the related foreign person is an amount covered by paragraph (b) of this section, regardless of whether the related foreign person is exempt from United States taxation on the amount owed pursuant to a treaty obligation of the United States.

Thus, under the regulation, a taxpayer who owes interest to a related foreign person, where the related foreign payee is exempt from taxation on the interest received from U.S. sources not effectively connected with a U.S. trade or business of the foreign payee due to a tax treaty, may not deduct the interest owed to the related foreign person until the taxpayer actually pays the interest to the related foreign person. Treas. Reg. 1.267(a)-3 is effective with respect to interest deductions allowable in tax years beginning after December 31, 1983. Treas. Reg. 1.267(a)-3(d).

The parties to this appeal agree that Treas. Reg. 1.267(a)-3 is a legislative regulation which was issued

pursuant to a clear congressional delegation of rule making authority. In reviewing an agency's construction of a statute which it administers, we take our lead from the Supreme Court's opinion in Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, reh'g. denied, 468 U.S. 1227 (1984). Under Chevron, we must first ask "whether Congress has directly spoken to the precise question at issue." Id. at 842. If Congress' intent is clear from the plain language of the statute, then our inquiry ends there. Id. If we conclude, however, that Congress has not directly addressed the precise question at issue or that the statute is silent or ambiguous regarding the issue, then we must determine whether the agency's interpretation "is based on a permissible construction of the statute." Id. at 843.

Inherent in the powers of an administrative agency is the authority to formulate policies and to promulgate rules to fill any gaps left, either implicitly or explicitly, by Congress. Id. (citing Morton v. Ruiz, 415 U.S. 199, 231 (1974)). Where Congress has expressly delegated to an agency the power to "elucidate a specific provision of the statute by regulation . . . . [s]uch legislative regulations are given controlling weight unless they are arbitrary, capricious, or manifestly contrary to the statute." Id. at 844 (footnote omitted).

Applying the Chevron test, we find initially that Congress' intent is not clear from the plain language of I.R.C. 267(a)(3). Congress specifically directed the Secretary to adopt regulations applying the "matching principle of paragraph (2)" to foreign related persons. If, as the Tax Court found and amici suggest, the plain meaning of section 267(a)(3) requires the Secretary to apply exactly the same matching principle of section 267(a)(2) to foreign persons, then the language of section 267(a)(3) is redundant. The Commissioner argues, moreover, that if the matching principle of section 267(a)(2) was strictly applied here, the U.S. payor would never be entitled to an interest deduction because the related foreign payee would never have to include interest in taxable income under a tax treaty with the United States. This unduly harsh result is one of the inequities Congress was attempting to rectify when it enacted I.R.C. 267(a)(2) in 1984.

> The rules of statutory construction mandate that:
> . . . a statute is to be read as a whole, see Massachusetts v. Morash, 490 U.S. 107, 115 (1989), since the meaning of statutory language, plain or not, depends on context. See, e.g., Shell Oil Co. v. Iowa Dept. of Revenue, 488 U.S. 19, 26 (1988). "Words are not pebbles in alien juxtaposition; they have only a communal existence; and not only does the meaning of each interpenetrate the other, but all in their aggregate take their purport from the setting in which they are used. . . ." NLRB v. Federbush Co., 121 F.2d 954, 957 (CA2 1941) (L. Hand, J.) (quoted in Shell Oil, supra, at 25, n.6).10

------------------

10    See also United States v. Hartwell, 6
Wall. 385, 396 (1868) (in construing statute
court should adopt that sense of words which
best harmonizes with context and promotes
policy and objectives of legislature). . .

King v. St. Vincent's Hospital, 502 U.S. 215, 221 (1991).  We do not believe that Congress would have enacted section 267(a)(3) if it intended to apply the same matching principle of section 267(a)(2) to foreign persons.  Thus, we find that it is unclear from the plain meaning of section 267(a)(3) how Congress intended the matching principle of section 267(a)(2) to apply to foreign related persons.

We turn to our second inquiry under Chevron --  whether the Secretary's interpretation as promulgated in Treas. Reg. 1.267(a)-3 is based on a permissible construction of section 267(a)(3).  The legislative history of section 267(a)(3) reveals that Congress anticipated other reasons for the mismatch of interest expense and income between related persons, which would defer the deduction of interest expense until actually paid.  In the Committee Reports, Congress explained the need for section 267(a)(3), stating that section 267(a)(2), as enacted in 1984, was unclear when the related payee was a foreign person, which did not, "for many Code purposes," include foreign source income that is not effectively connected with a U.S. trade or business in gross income for U.S. tax purposes.  S. Rep. No. 99-313, 99th Cong., 2nd Sess. 959; reprinted in 1986-3 C.B. (Vol. 3) at 959; H. Rep. No. 99-426, 99th Cong., 2nd Sess. 939, reprinted in 1986-3 C.B. (Vol. 2) at 939.

By way of example, the Committee described a situation where a foreign corporation, which was not engaged in a U.S. trade or business, performed services outside the United States for the benefit of a wholly owned U.S. subsidiary.  As a result of performing these services, the related foreign payee had foreign source income which was not effectively connected with a U.S. trade or business and, therefore, was not subject to U.S. tax.  In this situation, the Committee explained that the U.S. subsidiary could be required to use the cash method of accounting for the deduction of amounts owed to the foreign parent for the services rendered.  Id.  Although in this example the facts are slightly different than those presented in the case before us, it is clear that Congress anticipated a situation where the required use of the cash method of accounting by the U.S. payor is not based on the foreign payee's accounting method since, in the example, the foreign payee was not subject to U.S. tax on the income received from the related U.S. payor.

In promulgating Treasury Reg.  1.267(a)-3, the Secretary followed the directives of the House and Senate reports.  Both reports clearly indicate that Congress contemplated that section 267(a)(3) could be applied to situations where the foreign related payee was not ultimately subject to tax on the amount received, and that the regulations could require the U.S. subsidiary to use the cash method of accounting for the deduction of interest owed to its foreign

parent.  We find that the rule adopted by the Secretary, requiring a U.S. taxpayer to use the cash method of accounting with respect to the deduction of interest owed to a related foreign person, is a permissible construction of section 267(a)(3).

Having so found, we must also conclude that the regulation is not arbitrary, capricious or manifestly contrary to section 267(a)(3).  Nothing in the legislative history convinces us to the contrary.

While the Tax Court recognized that deference must be given to legislative regulations, it nonetheless invalidated Treas. Reg.  1.267(a)-3 as being "manifestly beyond the mandate of [section 267(a)(3)]."  103 T.C. 656, 671 (1994).  The Tax Court based its holding on the fact that the Commissioner disallowed the taxpayer's interest deductions for reasons other than the method of accounting of PLC.  Both the Tax Court and amici argued that because the plain meaning of section 267(a)(3) was clear, there was no need to look to the legislative history. Accordingly, the Tax Court held there was no provision that permitted the Secretary to expand the reach of the regulations under section 267(a)(3) beyond the matching principle of section 267(a)(2).  We disagree.  Recently, we reiterated the general rule on deference:

> In general, unless an issue is governed by an unambiguous statutory provision, courts must defer to an agency's interpretation of a statute it has been entrusted to administer.  Thus, the function for the court is not to impose its own interpretation of the statute, but simply to determine whether the agency's interpretation "is based on a permissible construction of the statute."  INS v. Cardoza-Fonseca, 480 U.S. 421, 445 n.29, 107 S. Ct. 1207, 94 L.Ed.2d 434 (1987).  The agency's interpretation will be "given controlling weight unless [it is] arbitrary, capricious, or manifestly contrary to the statute."  Id.

Cavert Acquisition Co. v. NLRB, ___ F.3d ___, Nos. 95-3231 and 95-3293, 1995 WL 854489, at *3 (3d Cir. May 2, 1996).  Having concluded earlier that the Secretary's interpretation was based on a permissible construction of I.R.C.  267(a)(3), we must reject the Tax Court's finding that Treas. Reg.  1.267(a)-3 was manifestly beyond the mandate of the statute.

In the alternative, the amici argue that Treas. Reg.  1.267(a)-3 is not supported by the legislative history.  Amici contend that the Commissioner overlooks the fact that the legislative history defines "matching principle" in terms of accounting methods.  They further contend that because the sole example in the Committee reports was absent from the final regulation, and because this example did not involve income exempt from tax because of a treaty, we should find that the Secretary's interpretation is not supported by the legislative

history.  We believe, however, that the amici are ignoring other statements contained in the House and Senate Committee reports which clearly support the Secretary's interpretation.

We agree with the Commissioner that the regulation is not manifestly contrary to section 267(a)(3).  We believe the Tax Court construed the language of section 267(a)(3) too narrowly, especially in light of the Supreme Court's holding in Chevron.  Accordingly, we find that the Tax Court erred in holding that Treas. Reg.  1.267(a)-3 is invalid to the extent it requires accrual basis taxpayers to defer interest deductions owed to a related foreign payee until the year the interest is paid.

III.

Having found that Treas. Reg.  1.267(a)-3 is a valid interpretation of section 267(a)(3), we must now consider whether the retroactive application of the regulation violated the Due Process Clause of the Fifth Amendment.  The four-judge plurality found that the period of retroactivity in this case was excessive rather than modest, and therefore was unduly harsh and oppressive.  In reaching this conclusion, the four-judge plurality relied on the Supreme Court's decision in United States v. Carlton, 114 S. Ct. 2018 (1994).  There, the Supreme Court set forth a two-part test for determining whether the retroactive application of a tax statute violates due process.  First, for retroactivity to be upheld, it must be shown that the statute has a rational legislative purpose and is not arbitrary; and second, that the period of retroactivity is moderate, not excessive.  Id.at 2022.  The Supreme Court in Carlton upheld the retroactive application of a tax law amending a statute which had been enacted only a year earlier, where the amendment had been proposed by Congress within a few months of the statute's original enactment.  Id. at 2023.

Based on the Supreme Court's holding in Carlton, the Tax Court found the six year period in this case excessive, and thus, violative of the Due Process Clause.  We find, however, that Carlton is distinguishable:  Carlton involved the retroactive application of a statute, and here we are dealing with the retroactive application of a regulation.

The retroactivity of treasury regulations is governed by I.R.C.  7805(b), which states:

> The Secretary may prescribe the extent, if
> any, to which any ruling or regulation,
> relating to the internal revenue laws, shall
> be applied without retroactive effect.

Clearly Congress has determined that treasury regulations are presumed to apply retroactively.  The extent to which newly promulgated regulations shall not apply retroactively is a matter of discretion left to the Secretary.  Automobile Club of Michigan v. Commissioner, 353 U.S. 180, 184-85, reh'g denied, 353 U.S. 989 (1957).

The amici contend that the Secretary abused his discretion under section 7805(b) in failing to limit the period of retroactivity.  In support of this position, the amici cite

Gehl Co. v. Commissioner, 795 F.2d 1324 (7th Cir. 1986); LeCroy Research Sys. Corp. v. Commissioner, 751 F.2d 123 (2d Cir. 1984); and CWT Farms, Inc. v. Commissioner, 755 F.2d 790 (11th Cir. 1985), cert. denied, 477 U.S. 903 (1986). These cases, however, are distinguishable from the facts of this case. All of the cases cited by the amici involved a prior express representation by the Commissioner in a DISC Handbook that the regulations, when adopted, would apply prospectively only. In CWT Farms, the court of appeals stated that "[a]n abuse of discretion may be found where retroactive regulation alters settled prior law or policy upon which the taxpayer justifiably relied and if the change causes the taxpayer to suffer inordinate harm." 755 F.2d at 802. The courts of appeals in these three cases found that the Commissioner abused his discretion by applying the regulations retroactively on the basis of their finding that the promise in the Handbook was binding.

Here, there was no such promise by the Commissioner regarding Treas. Reg.  1.267(a)-3. Moreover, the taxpayer had adequate notice within a reasonable time that regulations would be forthcoming which could alter the tax treatment of its interest deductions. Section 267(a)(2) was enacted on July 18, 1984, effective for tax years beginning after December 31, 1983. On October 22, 1986, section 267(a)(3) was added, also with the same effective date. On July 31, 1989, the Secretary announced rules in Notice 89-84, 1989-31 I.R.B. 8, which eventually became the proposed regulations, and were released on March 19, 1991. Then, on January 5, 1993, the Secretary released the final regulations applicable to section 267(a)(3), retroactive to tax years beginning after December 31, 1983. Thus, as early as October of 1986, the taxpayer had notice that regulations would be forthcoming which could alter the tax treatment of its interest deductions for tax years 1985, 1986 and 1986.

Indeed, the Supreme Court has upheld the retroactive application of tax regulations for a similar or longer period of retroactivity. See, e.g., National Muffler Dealers Ass'n, 440 U.S. at 478-82 (upholding the validity of a regulation which was issued six years after enactment of the statute and was subsequently modified ten years later). In E.I. du Pont de Nemours & Co. v. Commissioner, 41 F.3d 130, 139 & n. 37 (3d Cir. 1994), we upheld the validity of a regulation adopted thirteen years after enactment of a statute directing the Secretary to promulgate regulations.

We find, therefore, that the retroactive application of Treas. Reg.  1.267(a)-3 to the tax years in question does not violate the Due Process Clause of the Fifth Amendment. Based on the applicable legal standards and our earlier review of the relevant legislative history, we are unable to conclude that the Secretary abused his discretion in failing to limit the period of retroactivity for Treas. Reg.  1.267(a)-3.

IV.

For the reasons set forth above, we will reverse the decision of the Tax Court and remand this cause to the Tax Court

for the entry of a decision upholding the tax deficiencies for the years in question.