118 T.C. No. 15


UNITED STATES TAX COURT


SQUARE D COMPANY AND SUBSIDIARIES, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 6067-97.                    Filed March 27, 2002.


        P, an accrual method taxpayer, is a U.S. corp. and
subs. wholly owned by S, a foreign corp.  P accrued but
did not pay interest owed to S and another related
foreign person during 1991 and 1992 and claimed
deductions of such accrued interest in those years.  R
disallowed any deduction in a year prior to the year
the interest was actually paid and relies on sec.
1.267(a)-3, Income Tax Regs., in support of his
position.

        Held, the instant case raises the identical issue
decided in Tate & Lyle, Inc. v. Commissioner, 103 T.C.
656 (1994), revd. and remanded 87 F.3d 99 (3d Cir.
1996), of whether sec. 1.267(a)-3, Income Tax Regs., is
a valid exercise of the regulatory authority granted in
sec. 267(a)(3), I.R.C.  In light of the reversal by the
Court of Appeals for the Third Circuit, we reconsider
our holding.

Held, further, the two-part test of Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837 (1984), applied. Under the first part of the Chevron test, sec. 267(a)(3), I.R.C., authorizing regulations applying the "matching principle" of sec. 267(a)(2), I.R.C., to foreign persons, is not clear and unambiguous. Under the second part of the Chevron test, sec. 1.267(a)-3, Income Tax Regs., is a permissible construction of, and not manifestly contrary to, sec. 267(a)(3), I.R.C. To the extent our opinion in Tate & Lyle is inconsistent with this holding, we will no longer follow it.

Held, further, sec. 1.267(a)-3, Income Tax Regs., does not violate Article 24(3) of the Convention With Respect to Taxes on Income and Property, July 28, 1967, U.S.-Fr., 19 U.S.T. 5281, 5310.

Robert H. Aland, Gregg D. Lemein, John D. McDonald, and Holly K. McClellan, for petitioner.

Lawrence C. Letkewicz and Dana E. Hundrieser, for respondent.

OPINION

GALE, Judge: Respondent determined deficiencies in petitioner's Federal income taxes of $7,420,227, $28,971,522, and $15,285,996, for taxable years 1990, 1991, and 1992, respectively. Petitioner claims overpayments of $12,486,577 and $18,289 for taxable years 1990 and 1992, respectively. We must decide whether petitioner, an accrual method taxpayer, may deduct

certain interest owed to related foreign persons during the taxable years in which the interest was accrued but not paid.[1]

Unless otherwise noted, all section references are to the Internal Revenue Code in effect for taxable years 1991 and 1992, and all Rule references are to the Tax Court Rules of Practice and Procedure.

Factual Background

The facts have been stipulated by the parties and are so found. We incorporate by this reference the stipulation of facts, the first supplemental stipulation of facts, and accompanying exhibits. The following summary of the facts is based on the stipulations.

Square D Company, a Delaware corporation with its principal executive offices in Palatine, Illinois, is the common parent of an affiliated group of corporations making a consolidated return (collectively, petitioner). Petitioner computes consolidated taxable income on the basis of a calendar year.

Prior to its acquisition by Schneider S.A. (discussed below), petitioner was a publicly held company whose stock was traded on the New York Stock Exchange. During the years in issue petitioner was engaged in the United States and abroad in the manufacture and sale of electrical distribution and industrial

---

[1] Other issues raised in the instant case are considered in a separate opinion.

control products.  During the years in issue, Schneider S.A. (Schneider), a French corporation with its principal executive offices in Paris, France, was, through its subsidiaries, a multinational manufacturer and marketer of electrical distribution and industrial control equipment, among other activities.  Schneider owned, directly or indirectly, five major subsidiaries, including Merlin Gerin S.A. (MGSA) and Telemecanique S.A. (TESA), both French corporations.

Around late 1990 or early 1991, Schneider began taking steps to initiate a hostile takeover of petitioner.  In connection therewith, Schneider, MGSA, and TESA (the Schneider Lenders) organized Square D Acquisition Co. (ACQ) under the laws of California (and subsequently Delaware) as a transitory entity to serve as a vehicle for the acquisition of petitioner.  The Schneider Lenders together owned 100 percent of ACQ.  Eventually, after agreeing to ACQ's purchase of petitioner's outstanding stock for a total purchase price of about $2.25 billion, petitioner, Schneider, and ACQ entered into a merger agreement in May 1991.

On May 30, 1991, the merger was consummated.  ACQ's purchase of petitioner's stock was financed through a combination of loans from banks, capital contributions to ACQ from the Schneider Lenders, and loans from the Schneider Lenders that were required to be subordinated to the bank loans (1991 Subordinated Loans).

The 1991 Subordinated Loans, which totaled $328,272,605, had a fixed maturity date of May 30, 2001, and provided for interest at an annual rate of 10.7 percent, payable quarterly beginning September 30, 1991.

Effective August 22, 1991, ACQ merged into petitioner, which assumed ACQ's obligations under the bank loans and the 1991 Subordinated Loans. After the merger, the Schneider Lenders owned 100 percent of the stock of petitioner.

On August 23, 1991, the Schneider Lenders transferred the 1991 Subordinated Loans to Merlin Gerin Services, S.N.C. (SNC), a Belgian entity, in return for a 100-percent ownership interest in SNC. SNC was classified as a partnership for U.S. Federal income tax purposes. As a result of the transfer, the notes reflecting the 1991 Subordinated Loans were replaced with new notes designating petitioner as the borrower and SNC as the lender.

A year later, on August 24, 1992, Schneider made a loan, also subordinated to the bank loans, of $80 million to petitioner (1992 Subordinated Loan). The 1992 Subordinated Loan was evidenced by a promissory note, which had a fixed maturity date of May 30, 2001, and provided for interest at an annual rate of 9.8 percent, payable quarterly beginning September 30, 1992.

Although the promissory notes for the 1991 and 1992 Subordinated Loans made interest payable quarterly commencing September 30, 1991 and 1992, respectively, the promissory notes

provide for payment of principal and interest to be subordinated to payment in full of all amounts outstanding under the bank loans.  The agreement for the bank loans in general prohibits any payment of principal or interest on the Subordinated Loans before January 1, 1994.

Petitioner did not make any interest payments under the 1991 or 1992 Subordinated Loans during the years in issue.  Rather, petitioner accrued interest on the 1991 and 1992 Subordinated Loans during the years in issue as follows:

| Accrual year | 1991 Sub'd Loans | 1992 Sub'd Loan | Total |
|---|---|---|---|
| 1991 | $21,075,101 | | $21,075,101 |
| 1992 | 35,710,584 | $2,831,111 | 38,541,695 |

The 1991 and 1992 Subordinated Loans constituted debt for U.S. Federal income tax purposes.

Schneider, MGSA, TESA, and SNC were not engaged in a trade or business within the United States for U.S. Federal income tax purposes during the years in issue.  Interest accrued by petitioner had the following characteristics:  (i) It was not includible in the gross incomes of Schneider, MGSA, TESA, or SNC for U.S. Federal income tax purposes; (ii) it was from sources within the United States for U.S. Federal income tax purposes; and (iii) it was not effectively connected with the conduct of a U.S. trade or business for U.S. Federal income tax purposes. During the years in issue, petitioner and the Schneider Lenders

were members of the same controlled group of corporations as defined in section 267(b)(3) and (f).

During the years in issue, petitioner was a bona fide resident of the United States, and the Schneider Lenders were bona fide residents of France, within the meaning of Article 3(1a) and (2a) of the Convention With Respect to Taxes on Income and Property, July 28, 1967, U.S.-Fr., 19 U.S.T. 5281 (1967 Treaty). During the years in issue, neither the Schneider Lenders nor SNC maintained a permanent establishment in the United States within the meaning of the 1967 Treaty.

Article 10(1) of the 1967 Treaty would have applied to any payments by petitioner of the accrued interest on the 1991 and 1992 Subordinated Loans that occurred before January 1, 1996. As a result, the payments would have been exempt from taxes that otherwise would have been due under sections 881 and 1442.

Petitioner did not claim deductions for the interest accrued but unpaid with respect to the 1991 and 1992 Subordinated Loans on its returns for taxable years 1991 and 1992. During the course of the examination by respondent, petitioner informally requested that it be allowed to deduct the amounts of interest accrued in 1991 and 1992; namely, $21,075,101 and $38,541,695, respectively. In the notice of deficiency, respondent determined petitioner was not entitled to the deductions.

Discussion

A. Secretary's Authority Under Section 267(a)(3)

1. Introduction

We must decide whether petitioner, an accrual basis taxpayer, may deduct the interest at issue during the taxable years in which the interest was accrued or must delay the deductions until the taxable years in which the interest was actually paid.  The answer to the question hinges on the validity of section 1.267(a)-3, Income Tax Regs., as that section applies to the interest in the instant case.  In general, the regulation would prevent petitioner from deducting the interest until the amounts are actually paid.  Not surprisingly, respondent argues in favor of the validity of the regulation, while petitioner argues against it.  We considered the identical issue in Tate & Lyle, Inc. v. Commissioner, 103 T.C. 656 (1994) (Tate & Lyle I), revd. and remanded 87 F.3d 99 (3d Cir. 1996) (Tate & Lyle II), in which we held that the regulation was invalid.  In light of the reversal by the Court of Appeals for the Third Circuit, we reconsider our holding.  We now hold that the regulation is valid as a permissible construction of the statutory language that authorizes it.  To the extent our opinion in Tate & Lyle I is inconsistent, we will no longer follow it.

2. Statutory and Regulatory Provisions

Section 1.267(a)-3, Income Tax Regs., is a legislative

regulation, promulgated pursuant to a specific grant of authority in section 267(a)(3).  That provision makes the authorization with reference to section 267(a)(2).  The provisions state:

SEC. 267(a).  In General.--

        *      *      *      *      *      *      *

(2) Matching of deduction and payee income item in the case of expenses and interest.--If--

(A) by reason of the method of accounting of the person to whom the payment is to be made, the amount thereof is not (unless paid) includible in the gross income of such person, and

(B) at the close of the taxable year of the taxpayer for which (but for this paragraph) the amount would be deductible under this chapter, both the taxpayer and the person to whom the payment is to be made are persons specified in any of the paragraphs of subsection (b),

then any deduction allowable under this chapter in respect of such amount shall be allowable as of the day as of which such amount is includible in the gross income of the person to whom the payment is made (or, if later, as of the day on which it would be so allowable but for this paragraph).  * * *

(3) Payments to foreign persons.  The Secretary shall by regulations apply the matching principle of paragraph (2) in cases in which the person to whom the payment is to be made is not a United States person.

Thus, section 267(a)(2) provides in general that in the case of amounts owed to certain related persons (specified in section 267(b)), if the person to whom the amount is owed, as a result of that person's accounting method, need not include the amount in

income unless it is actually paid, then the person who owes the amount cannot deduct it until it is includible by the first person.[2] Further, section 267(a)(3) directs the Secretary to issue regulations applying the "matching principle" of section 267(a)(2) to foreign persons. The phrase "matching principle" does not appear in section 267(a)(2) and is not defined elsewhere in the Code.

The regulation we are concerned with is section 1.267(a)-3(c)(2), Income Tax Regs., which, in combination with section 1.267(a)-3(b)(1), Income Tax Regs., requires a taxpayer to use the cash method of accounting in deducting amounts of interest, which is U.S. source and not income effectively connected with a U.S. trade or business, owed to a related foreign person, whether or not the foreign person is exempt from U.S. tax on such interest under a treaty. The parties have stipulated that Article 10(1) of the 1967 Treaty would have applied to any payments of interest by petitioner on the 1991 and 1992 Subordinated Loans before 1996 and therefore that the payments would have been exempt from taxes otherwise due under sections 881 and 1442. The parties have further stipulated that if section 1.267(a)-3, Income Tax Regs., is valid, petitioner is not

---

[2] For convenience, we shall sometimes use the term "payor" to refer to the person who owes the amount in question and "payee" to refer to the person to whom the amount is owed, even if the amount in question has not been paid.

entitled to deduct, during taxable years 1991 and 1992, interest accrued on the 1991 and 1992 Subordinated Loans.[3]

### 3. Tate & Lyle

In Tate & Lyle I we held that section 1.267(a)-3, Income Tax Regs., insofar as it required an accrual basis taxpayer to use the cash method with respect to interest owed to a foreign person that was exempt from U.S. tax pursuant to treaty, was invalid because it was manifestly contrary to the statute.[4]  We reasoned that the "matching principle" of section 267(a)(2) was as follows:  "An accrual basis taxpayer is not entitled to deduct any amount if it is payable to a related person and, because of the payee's method of accounting, the item is not currently includible in the payee's gross income."  Tate & Lyle I at 667.  Further, we found the mandate in section 267(a)(3) that the Secretary apply this matching principle to be "absolutely clear" on its face, thus confining the ambit of the regulations to those situations where the failure of the payor's deduction to "match" the payee's income inclusion was attributable to the payee's method of accounting.  Because section 1.267(a)-3's restriction

---

[3] In light of these stipulations, we do not consider the impact, if any, of the fact that the interest on the 1991 Subordinated Loan was owed to SNC rather than the Schneider Lenders.

[4] We also held in the alternative that the regulation was invalid because its retroactive application violated the Due Process Clause of the Constitution.  The due process issue is not present in the instant case.

on deductions extended to situations where the failure to match was <u>not</u> attributable to the payee's method of accounting (but instead was attributable to a treaty exclusion from the payee's income), it "[went] beyond applying the matching principle of section 267(a)(2)." Tate & Lyle I at 670. Accordingly, insofar as the challenged regulation precluded the deduction of properly accrued interest owed to a foreign person that was entitled to exclude the interest from gross income under a treaty, it was "manifestly beyond the mandate of the statutory authorization and therefore * * * invalid". <u>Id.</u> at 671.

The Court of Appeals for the Third Circuit reversed in Tate & Lyle II. The Court of Appeals found that our interpretation failed to give appropriate consideration to the structure of the statute, in particular the interaction of section 267(a)(2) and (3): "If, as the Tax Court found * * *, the plain meaning of section 267(a)(3) requires the Secretary to apply exactly the same matching principle of section 267(a)(2) to foreign persons, then the language of section 267(a)(3) is redundant." Tate & Lyle II at 104. Because in the Court of Appeals's view "Congress intended more" in enacting section 267(a)(3), Tate & Lyle II at 104 n.12, the court concluded that section 267(a)(3)'s mandate to apply the matching principle in the case of foreign persons was <u>not</u> clear. Consequently, the Court of Appeals reasoned, under the <u>Chevron</u> doctrine, see <u>Chevron U.S.A., Inc. v. Natural Res.</u>

Def. Council, Inc., 467 U.S. 837 (1984), the challenged regulation need only represent a permissible construction of section 267(a)(3).  Based on a review of the legislative history, the Court of Appeals concluded that section 1.267(a)-3, Income Tax Regs., was a permissible construction and therefore valid, rejecting our view that the regulation was manifestly contrary to the statute.

### 4. Chevron

In light of the Court of Appeals' reversal, we reconsider our holding in Tate & Lyle I.  Because we are reviewing respondent's construction of a statute he administers, our analysis is governed by Chevron.  Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc., supra; see also Bankers Life & Cas. Co. v. United States, 142 F.3d 973 (7th Cir. 1998) (Chevron doctrine applies to tax regulations, whether legislative or interpretive).  Under Chevron, when reviewing an agency's regulatory implementation of a statute, we look first to the intent of Congress.  If Congressional intent is clear, our inquiry ends, and we simply apply the clear intent of Congress.  However, if Congressional intent is not clear, the question is whether the regulation is based on a permissible construction of the statute.  Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc., supra at 842-843.

Thus, in the first step of a <u>Chevron</u> analysis we must ascertain whether the statute is clear and unambiguous, and in the second step we consider whether, given ambiguities in the statute, the regulation is based on a permissible construction of the statute. The agency's choice among permissible constructions is entitled to deference. <u>Holly Farms Corp. v. NLRB</u>, 517 U.S. 392, 398-399 (1996). Indeed, where as here the regulation is legislative in character, it must be upheld unless "arbitrary, capricious, or manifestly contrary to the statute". <u>Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.</u>, <u>supra</u> at 844; <u>N.Y. Football Giants, Inc. v. Commissioner</u>, 117 T.C. 152, 156 (2001); <u>Peterson Marital Trust v. Commissioner</u>, 102 T.C. 790, 797-798 (1994), affd. 78 F.3d 795 (2d Cir. 1996).

5. <u>Analysis</u>

a. <u>Chevron, First Step</u>

In Tate & Lyle I, we concluded that the statutory language of section 267(a)(3) is clear; namely, that it authorizes regulations to limit deductions only where a mismatch of a deduction and corresponding income inclusion results from the payee's method of accounting because, we reasoned, "the matching principle of paragraph (2)" covers only mismatches attributable to that cause.

The Supreme Court recently provided additional guidance for administering the first step of the <u>Chevron</u> test in <u>FDA v. Brown</u>

& Williamson Tobacco Corp., 529 U.S. 120 (2000). In determining whether the statute is clear for purposes of the Chevron doctrine, the Supreme Court reiterated the "fundamental canon" of statutory construction that "the words of a statute must be read in their context and with a view to their place in the overall statutory scheme" and that a reviewing court performing a Chevron analysis must "fit, if possible, all parts into an harmonious whole". Id. at 133 (citations omitted). The Supreme Court enunciated the further principle that "the meaning of one statute may be affected by other Acts, particularly where Congress has spoken subsequently and more specifically to the topic at hand". Id. "At the time a statute is enacted, it may have a range of plausible meanings. Over time, however, subsequent acts can shape or focus those meanings." Id. at 143.

Applying these principles, the Supreme Court in Brown & Williamson concluded that the Food, Drug, and Cosmetic Act, ch. 675, 52 Stat. 1040 (Act) (1938), currently codified at 21 U.S.C. secs. 301, 321(g) and (h), 393 (2000), must be interpreted under Chevron to preclude Food and Drug Administration (FDA) regulatory authority over tobacco, even though the Act gave the FDA authority to regulate "drugs" and "combination products" and defined those terms in a manner that on its face might appear to cover nicotine and cigarettes, respectively. The Supreme Court reached this conclusion because, notwithstanding that nicotine

and cigarettes might appear to fall within the statutory definitions of "drug" and "combination product" when such definitions were considered in isolation, consideration of the statute as a whole and in the context of other enactments revealed items that conflicted with any grant of jurisdiction in the Act to the FDA to regulate tobacco.

In view of the refinements of the Chevron doctrine in Brown & Williamson, we believe our opinion in Tate & Lyle I may have given insufficient attention to fitting all parts of section 267(a) into "an harmonious whole". If, as we held in Tate & Lyle I, section 267(a)(3) authorizes only regulations that address mismatches resulting from the payee's method of accounting, then it would appear that section 267(a)(3) is redundant in relation to section 267(a)(2), as the Court of Appeals for the Third Circuit reasoned. That is because section 267(a)(2) would already reach, and implicitly authorize regulations covering, payments owed to a related foreign person with a (U.S.) method of accounting for such payments. Moreover, as in Brown & Williamson, there was a time gap between the enactment of section 267(a)(2) and (a)(3), the latter provision being enacted some 2 years after the former.[5] The subsequent enactment of 267(a)(3)

---

[5] Sec. 267(a)(2) was amended in 1984 to the form in effect in the years in issue. Deficit Reduction Act of 1984, Pub. L. 98-369, sec. 174(a), 98 Stat. 704. Sec. 267(a)(3) was added to the Code in 1986. Tax Reform Act of 1986, Pub. L. 99-514, sec.

(continued...)

may, under the principles of <u>Brown & Williamson</u>, be interpreted as altering the precise contours of section 267(a)(2) for purposes of applying the <u>Chevron</u> doctrine.  That is, when considered in isolation, section 267(a)(2) may well appear to describe a "matching principle" applicable only to mismatches caused by the payee's method of accounting, but when the subsequent enactment of section 267(a)(3) is brought to bear on (a)(2)'s meaning, that meaning may thereby have been "shaped" to include something broader, especially if (a)(3) must be construed to harmonize with the rest of the statute and avoid redundancy. Thus, giving due regard to the Supreme Court's admonition in <u>FDA v. Brown & Williamson Tobacco Corp.</u>, <u>supra</u> at 133, to "fit * * * all parts into an harmonious whole" and to consider the effect of subsequent enactments when undertaking step one of a <u>Chevron</u> analysis, we conclude that the meaning of section 267(a)(3) is <u>not</u> clear.  If that section is to be construed to avoid redundancy, then the intent of Congress in authorizing regulations thereunder is uncertain.

### b. Chevron, Second Step

In light of our conclusion that section 267(a)(3) is unclear, we proceed to the second step of the <u>Chevron</u> analysis.

---

[5](...continued)
1812(c), 100 Stat. 2834.  Both were effective retroactively to taxable years beginning after Dec. 31, 1983.  Deficit Reduction Act of 1984, Pub. L. 98-369, sec. 174(c), 98 Stat. 707-708; Tax Reform Act of 1986, Pub. L. 99-514, sec. 1881, 100 Stat. 2914.

In this step, we defer to the agency's choice between "conflicting reasonable interpretations" of the statute. Holly Farms Corp. v. NLRB, 517 U.S. at 398-399. We examine, inter alia, legislative history in the second step of the Chevron inquiry.[6] See id. at 402 n.8.

A close examination of the legislative history reveals that Congress intended the Secretary's authority under section 267(a)(3) to encompass imposition of the cash method on the payor where the foreign payee does not have a U.S. method of accounting with respect to the amounts owed. Section 267(a)(3) was added to the Code because Congress felt "The application of * * * [section 267(a)(2)] is unclear when the related payee is a foreign person that does not, for many Code purposes, include in gross income foreign source income that is not effectively connected with a U.S. trade or business." H. Rept. 99-426, at 939 (1985), 1986-3

---

[6] The extent to which extrinsic factors (i.e., factors outside the statutory language itself) may be considered in step one of a Chevron analysis may not be entirely clear after FDA v. Brown & Williamson Tobacco Corp., 529 U.S. 120 (2000). There, the Supreme Court clearly considered an extrinsic factor, namely, subsequent Congressional actions, as part of step one. With respect to legislative history, however, the Court of Appeals for the Seventh Circuit, to which an appeal in this case would ordinarily lie, generally adheres to the view that legislative history may not be considered in step one. See MBH Commodity Advisors, Inc. v. CFTC, 250 F.3d 1052, 1060-1061, 1061-1062 (7th Cir. 2001); Bankers Life & Cas. Co. v. United States, 142 F.3d 973, 983 (7th Cir. 1998). In light of the position of the Court of Appeals, we do not consider legislative history as part of our analysis of step one of Chevron in the instant case. See Golsen v. Commissioner, 54 T.C. 742 (1970), affd. 445 F.2d 985 (10th Cir. 1971).

C.B. (Vol. 2) 1, 939; S. Rept. 99-313, at 959 (1986), 1986-3 C.B. (Vol. 3) 1, 959.  In this passage, Congress expressed its uncertainty as to the application of section 267(a)(2) in a situation where the foreign person has foreign source, non-effectively connected income that need not, for many Internal Revenue Code purposes, be included in U.S. gross income.  A characteristic of the foregoing type of income is that the foreign recipient lacks a U.S. method of accounting for it if the income need not be included in U.S. gross income.

Both the House and Senate reports provide an example to illustrate what could be required by the regulations contemplated under section 267(a)(3):

> For example, assume that a foreign corporation, not engaged in a U.S. trade or business, performs services outside the United States for use by its wholly owned U.S. subsidiary in the United States.  That income [i.e., the payment by the U.S. subsidiary to the foreign parent for the services rendered] is foreign source income that is not effectively connected with a U.S. trade or business.  It is not subject to U.S. tax (or, generally includible in the foreign parent's gross income).  Under the bill, regulations could require the U.S. subsidiary to use the cash method of accounting with respect to the deduction of amounts owed to its foreign parent for these services. * * *  [H. Rept. 99-426, supra at 939, 1986-3 C.B. (Vol. 2) at 939; S. Rept. 99-313, supra at 959, 1986-3 C.B. (Vol. 3) at 959.]

We believe this example shows that Congress intended to give the Secretary authority to require the cash method for the deduction of amounts owed to a related foreign person even where those

amounts would <u>never</u> be included in the foreign person's U.S. gross income--that is, irrespective of any method of accounting of the foreign payee.[7] We note also that the situation where the amounts owed to the related foreign person are foreign source, non-effectively connected income is denominated an "<u>example</u>" of where the regulatory authority conferred was intended to be exercised, which suggests <u>other</u> examples were also contemplated where the foreign payee would lack a U.S. method of accounting.

The legislative history goes further in its guidance. It specifically (i) contemplates the need for regulations when the amounts owed to a related foreign person are eligible for treaty benefits and (ii) suggests that it is the absence of a U.S. method of accounting that determines the intended scope of the regulatory authority. The House and Senate reports both provide:

> Regulations will not be necessary when an amount paid to a related foreign person is effectively connected with a U.S. trade or business (unless a

---

[7] In <u>Tate & Lyle, Inc. v. Commissioner</u>, 103 T.C. 656, 670 (1994) (Tate & Lyle I), we acknowledged that the foregoing legislative history was "troublesome" with respect to our "literal reading of section 267(a) and its matching principle" as having application only where failures to match were attributable to methods of accounting. Because we conclude in the instant case, in contrast to Tate & Lyle I, that the statute is not clear, the legislative history must be accorded greater weight.

Moreover, as respondent argues, the legislative history for the predecessor of sec. 267(a)(<u>2</u>) suggests that Congress enacted that section to cover cases where the payee would not include the amount because the amount was accrued and deducted but never actually paid. See S. Rept. 1242, 75th Cong., 1st Sess. (1937), 1937-2 C.B. 609, 630.

> treaty reduces the tax). In that case, present law already imposes matching. However, regulations may be necessary when a foreign corporation uses a method of accounting for some U.S. tax purposes (e.g., because some of its income is effectively connected), but when the method does not apply to the amount that the U.S. person seeks to accrue. [H. Rept. 99-426, supra at 940, 1986-3 C.B. (Vol. 2) at 940; S. Rept. 99-313, supra at 960, 1986-3 C.B. (Vol. 3) at 960.]

We believe a set of principles is discernible from the foregoing. The authority granted by section 267(a)(3) does not apply (i.e., "Regulations will not be necessary") in the case of effectively connected income because (we infer) the foreign recipient in this instance would have a U.S. method of accounting for such income, triggering a straightforward application of section 267(a)(2) (i.e., "present law already imposes matching"). Regulations under section 267(a)(3) would be necessary, however, where treaty benefits are available. Finally, the last sentence in the passage illustrates the fundamental principle underlying the intended regulatory authority, in our view; namely, the scope of the regulations under section 267(a)(3) is generally determined by the presence or absence of a U.S. method of accounting for the income item in the hands of the foreign recipient, where the U.S. payor seeks to accrue a deduction with respect to that item.[8]

---

[8] We also note that other provisions of the regulations that have been issued pursuant to sec. 267(a)(3) (i.e., besides the provision at issue herein) reflect this principle. The provisions in general impose the cash method on the U.S. payor under sec. 267(a)(3) only where the related foreign payee lacks a U.S. method of accounting for the item otherwise accruable by the

(continued...)

Petitioner relies on the same passages from the legislative history previously quoted to argue that the regulation at issue exceeds the Secretary's authority.  First, with respect to the example cited in the legislative history, petitioner argues that the passage indicates that Congress authorized regulations to cover only the situation set out in that example; i.e., where the amount owed to the foreign person is neither U.S. source nor effectively connected income.  According to petitioner, Congress did not authorize regulations covering amounts owed that are U.S. source income, as in the instant case.

Petitioner effectively reads "for example" as used in the committee reports as denoting the exclusive scenario in which the regulatory authority was intended to operate.  We think this is at best a strained reading of "for example" and that the ordinary usage of that phrase does not suggest exclusivity.  Regardless of whether petitioner or respondent (with whom we happen to agree) has the better interpretation of the passage, we conclude that respondent's construction, as embodied in the challenged regulation, is a permissible one.  Under the <u>Chevron</u> doctrine, that settles the matter.  Respondent's interpretation of the regulatory authority granted in section 267(a)(3) is reasonable in light of the legislative history and therefore is entitled to

---

[8](...continued)
payor and apply section 267(a)(2) where such payee has a U.S. method of accounting for the item.

deference under <u>Chevron U.S.A., Inc. v. Natural Res. Def.
Council, Inc.</u>, 467 U.S. 837 (1984).  As a permissible
construction, the regulation is ipso facto not manifestly
contrary to the statute.

Petitioner also mounts an argument based on the previously
quoted passage from the committee reports that cites instances
where "a treaty <u>reduces</u> the tax" (emphasis added).  Petitioner
argues that Congress thereby intended to distinguish between
<u>reductions</u> and <u>eliminations</u> of tax by treaty, citing respondent's
maintenance of that distinction in other contexts.  Therefore,
the argument goes, Congress intended to authorize regulations in
the case of reductions, but not eliminations, of tax by treaty,
such as exist in the instant case.  For the same reasons just
outlined, petitioner's argument must fail.  Even if petitioner's
interpretation were the better one, it cannot be said that
respondent's position in the challenged regulation--to the effect
that the committee report's use of "reduction" encompasses
"elimination" of tax by treaty--is an impermissible construction
of the statute.  Under the <u>Chevron</u> doctrine, respondent's
position prevails.

## B. Treaty Nondiscrimination Provision

Petitioner argues in the alternative that section 1.267(a)-
3, Income Tax Regs., as applied in this case violates Article
24(3) of the 1967 Treaty (Article 24(3)).

Treaties and statutes are viewed under the Constitution as on the "same footing". <u>Whitney v. Robertson</u>, 124 U.S. 190, 194 (1888) (cited in <u>Am. Air Liquide, Inc. & Subs. v. Commissioner</u>, 116 T.C. 23, 28-29 (2001)); see secs. 894(a), 7852(d). Indeed, when a treaty and statute relate to the same subject,

> the courts will always endeavor to construe them so as to give effect to both, if that can be done without violating the language of either; but if the two are inconsistent, the one last in date will control the other, * * * [<u>Whitney v. Robertson</u>, <u>supra</u> at 194.]

For the reasons outlined below, we do not believe that section 267(a)(3) and section 1.267(a)-3, Income Tax Regs., are inconsistent with Article 24(3).[9]

Article 24(3) provides as follows:

> A corporation of a Contracting State, the capital of which is wholly or partly owned or controlled, directly or indirectly, by one or more residents of the other Contracting State, shall not be subjected in the first-mentioned Contracting State to any taxation or any requirement connected therewith which is other or more burdensome than the taxation and connected requirements to which a corporation of that first-mentioned Contracting State carrying on the same activities, the capital of which is wholly owned by one or more residents of that first-mentioned State, is or may be subjected.

---

[9] We note that the rule establishing parity between treaties and Federal laws concerns statutes rather than Treasury regulations, and that petitioner is challenging the regulation in question rather than the statute. However, we need not, and do not, decide whether the regulation is equivalent to a statute for these purposes, because we find that it does not violate Article 24(3). See Blessing & Dunahoo, Income Tax Treaties of the United States (1999), par. 1.03[1][a][ii]; cf. <u>Am. Air Liquide, Inc. & Subs. v. Commissioner</u>, 116 T.C. 23 (2001); <u>UnionBanCal Corp. v. Commissioner</u>, 113 T.C. 309 (1999).

Thus, for purposes of the instant case, Article 24(3) provides that a U.S. corporation owned by French residents (French-owned corporation) shall not be subjected to U.S. taxation that is "other or more burdensome" than the taxation to which a U.S. corporation owned by U.S. residents (U.S.-owned corporation), "carrying on the same activities" as the French-owned corporation, is subjected. Petitioner argues that petitioner, a French-owned corporation, is subjected to other or more burdensome taxation than a U.S.-owned corporation would be. We disagree.

Article 24(3) prevents "other or more burdensome" treatment based on the residence of the owners of the capital of the corporation. Article 24(3) does not apply when there is no connection between the residence of the owners and the different tax treatment that results under U.S. law. See generally Vogel, Klaus Vogel on Double Taxation Conventions, Art. 24(5) par. 165 (3d ed. 1997) ("The provision does not protect enterprises in which non-residents participate, against discrimination generally, when there is no connection between the discrimination and the ownership of capital by foreigners."). Petitioner does not seem to dispute this. Rather, petitioner argues that different treatment in the instant case is connected to the residence of the owners; i.e., that petitioner is denied an accrual basis deduction for interest amounts owed to its foreign

owner,[10] but a hypothetical U.S.-owned corporation would be permitted accrual basis deductions for interest amounts owed to its U.S. owner (as long as that owner used the accrual method).

We are not persuaded by petitioner's supposed "connection". Section 1.267(a)-3, Income Tax Regs., operates independently of the residence of the owners of the payor corporation; the fact that payments to a foreign owner might be treated differently from payments to a U.S. owner is merely incidental. As respondent argues: "The basis for deferring the interest deduction [under the challenged regulation] is dependent entirely on the U.S. tax treatment of the payment in the hands of the foreign corporation, not the identity or nationality of the owner of the payor." This is clear when the operation of section 1.267(a)-3, Income Tax Regs., is examined more closely. For instance, a U.S. corporation, whether U.S.-owned or foreign-owned, must in general deduct on the cash method interest payments to a related foreign person that are not effectively connected income of that foreign person. Sec. 1.267(a)-3(b)(1)

_____

[10] As noted earlier, see _supra_ note 3, none of the interest with respect to the 1991 Subordinated Loans was owed to petitioner's parent, Schneider, because it was all owed to SNC during the years in issue. Thus, petitioner's argument would not apply to the interest on the 1991 Subordinated Loans. However, the interest on the 1992 Subordinated Loan _was_ owed to Schneider, making petitioner's argument relevant to that interest. In any event, we find that sec. 1.267(a)-3, Income Tax Regs., does not violate Article 24(3), rendering moot whether the interest at issue was owed to Schneider or to SNC.

and (2), (c)(2), Income Tax Regs.  Further, payments of interest that are effectively connected income may be deducted on the accrual method if the foreign payee uses the accrual method, again without regard to the residence of the owners of the payor. Sec. 1.267(a)-3(c)(1) and (2), Income Tax Regs.  Thus, if a U.S. corporation is making a payment of interest to a related foreign person, the accounting method for deducting the amount depends on whether the interest is or is not effectively connected income, and on whether the payee uses the accrual method, not on the residence of the owners of the U.S. corporation.  See also sec. 1.267(a)-3(c)(4), Income Tax Regs. (amounts owed to controlled foreign corporation and similar enterprises are deductible on the accrual method if the enterprise uses the accrual method).  In sum, there is nothing in the regulation in issue that subjects petitioner to other or more burdensome taxation.  Thus, there is no violation of Article 24(3).

<u>Conclusion</u>

We conclude that section 1.267(a)-3, Income Tax Regs., is a valid exercise of the regulatory authority granted in section 267(a)(3) and does not violate Article 24(3) of the 1967 Treaty. To the extent any other arguments of the parties are not addressed, they are moot, irrelevant, or meritless.

To reflect the foregoing,

<u>An appropriate order will</u>

<u>be issued</u>.

Reviewed by the Court.

SWIFT, GERBER, COLVIN, HALPERN, BEGHE, LARO, FOLEY, THORNTON, and MARVEL, <u>JJ.</u>, agree with the majority opinion.

WHALEN, <u>J.</u>, dissents.

RUWE, J., dissenting:  Section 267(a)(2) prevents an accrual basis taxpayer from currently deducting any amount payable to a related person if the amount is not currently includable in the payee's gross income because of the payee's method of accounting. Section 267(a)(3) authorizes regulations to apply the matching principle of section 267(a)(2) in cases where the payee is a foreign person.  As explained in the Commissioner's Notice 89-84:

> Section 267(a)(2) of the Code provides generally that a taxpayer may not deduct any amount owed to a related party (as defined in section 267(b)) until it is includible in the payee's gross income if the mismatching arises because the parties use different methods of accounting.  Section 267(a)(3) authorizes the Secretary to issue regulations applying this principle to payments to related foreign persons. * * *  [Notice 89-84, 1989-2 C.B. 402; emphasis added.]

Nevertheless, section 1.267(a)-3, Income Tax Regs., puts accrual method taxpayers, who could otherwise deduct interest payable to a related foreign person, on the cash method of accounting, even though, pursuant to a treaty, the interest is not, and never will be, includable in the payee's gross income.  The regulation would disallow the deduction for accrued interest regardless of the fact that the exclusion from the payee's gross income has nothing to do with payee's method of accounting.  As more fully set forth in our plurality opinion in Tate & Lyle, Inc. & Subs. v. Commissioner, 103 T.C. 656 (1994), the regulation goes beyond the scope of the regulatory authority specifically granted in section

267(a)(3) because it is not based on the matching principle stated in section 267(a)(2).

The majority states that restricting the scope of the regulations under section 267(a)(3) to the application of the matching principle articulated in section 267(a)(2) would make section 267(a)(3) redundant. But section 267(a)(3) literally authorizes regulations only in order to <u>apply</u> the matching principle of section 267(a)(2). Section 267(a)(3) was enacted because Congress perceived some uncertainty in how to <u>apply</u> the matching principle where the payee was a foreign person.[1] It does not authorize regulations that <u>change</u> the matching principle. Thus, the Commissioner correctly argued in <u>Tate & Lyle, Inc.</u>:

> I.R.C. §267(a)(3) only clarified existing tax law.
> * * *
>
>      *     *     *     *     *  *     *
>
>     Here, I.R.C. §267(a)(3), was enacted to clarify I.R.C. §267(a)(2), which had been effective since 1984. Tax Reform Act of 1984, Pub. L. No. 98-369, sec. 174(a)(1). Because I.R.C. §267(a)(3) is a technical correction or clarification of the earlier law, it, too, was made effective by Congress for tax years beginning after December 31, 1983. Pub. L. No. 99-514,

---

[1] For example, in the case of a foreign payee there was uncertainty whether the terms "gross income" and "method of accounting" referred to gross income and method of accounting for U.S. tax purposes. In <u>Tate & Lyle, Inc. & Subs. v. Commissioner</u>, 103 T.C. 656, 662 (1994), we agreed with respondent that the terms "gross income" and "method of accounting" as used in sec. 267(a)(2) meant for U.S. tax purposes.

§§1812(c)(1), 1881. [<u>Tate & Lyle, Inc. & Subs. v.
Commissioner</u>, <u>supra</u> at 661.]

Following this rationale, the Commissioner argued in <u>Tate & Lyle,
Inc.</u> that even without section 267(a)(3) and section 1.267(a)-3,
Income Tax Regs., the taxpayer's interest could only be deducted
when paid.[2]  <u>Id.</u>

In <u>Tate & Lyle, Inc.</u>, we explained in great detail why
section 1.267(a)-3, Income Tax Regs., goes well beyond applying
the matching principle defined in section 267(a)(2).  On the
basis of that analysis, I believe that the portion of the
regulations that would preclude petitioner from accruing and
deducting the interest in question is manifestly beyond the
statutory authorization and therefore is invalid.  See <u>Rite Aid
Corp. v. United States</u>, 255 F.3d 1357 (Fed. Cir. 2001).

WELLS, COHEN, CHIECHI, and VASQUEZ, <u>JJ.</u>, agree with this
dissenting opinion.

---

[2]In <u>Tate & Lyle, Inc. & Subs. v. Commissioner</u>, <u>supra</u>, we
rejected this argument, and it appears that the majority in the
instant case also rejects any argument that petitioner's claimed
interest deduction would be disallowed under sec. 267(a)(2) even
without enactment of sec. 267(a)(3) and sec. 1.267(a)-3, Income
Tax Regs.